[L. A. No. 796.   Department Two. — March 12, 1901.]

GRACE E. YARWOOD, Plaintiff, and LOUIS MICHAUD et al., Intervening Plaintiffs and Appellants, v. WEST LOS ANGELES WATER COMPANY et al., Respondents.

RIPARIAN RIGHTS — SUBTERRANEAN WATERCOURSE — DIVERSION BELOW RIPARIAN LANDS — BURDEN OF PROOF. — In an action by riparian owners to restrain the diversion of a natural watercourse subterranean to their lands, by a water company, which has diverted the stream by means of an excavation in the bed of the stream, on lands entirely below those of the plaintiffs, the burden of proof is upon the plaintiffs to show to the satisfaction of the court that the water on their premises had been interfered with, to their injury, by the defendants.

ID. — DIFFICULT QUESTION OF FACT — CIRCUMSTANTIAL EVIDENCE — SUPPORT OF FINDINGS — APPEAL. — Where the question whether the action of the defendants on lands below had interfered with the flow of the stream on plaintiffs' lands, was a difficult question of fact, as to which the evidence was circumstantial, or of an inferential kind, and much of it vague and uncertain, if there was evidence tending to support findings that the defendants had not interfered with nor diminished the volume of the stream on plaintiffs' lands, nor affected the course thereof, nor caused any damage or injury to plaintiffs, the decision of the trial court in favor of the defendants will not be disturbed upon appeal.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial.   Lucien Shaw, Judge.

The facts are stated in the opinion of the court.

Lynn Helm, for Appellants.

Freeman & Bates, and Borden & Carhart, for Respondents.

THE COURT.— The plaintiff and the interveners appeal from an order denying them a new trial.

The plaintiff Yarwood and three several intervening plaintiffs, each in a several complaint, allege ownership of one or more lots of the "Rancho Providencia and Scott tract as resurveyed," etc., situated in Los Angeles County.   In their several complaints, said plaintiffs further allege that a certain stream or wash flows in a natural channel and watercourse, on the surface and underground, "adjacent and contiguous to and in" the several lots and premises belonging to each of said plaintiffs, which water, if allowed to flow in its natural course, would supply the necessities of plaintiffs; that plaintiffs are entitled to the use of said waters for domestic and irrigation purposes; that at all times since the first day of July, 1895, the said defendants have wrongfully and unlawfully interfered with the use of the water to which plaintiffs were entitled as aforesaid, and have wrongfully diverted and abstracted, and deprived plaintiffs of, large portions of said waters, so that said plaintiffs have not sufficient water for their purposes as aforesaid; that defendants threaten, and unless restrained from so doing will continue to so wrongfully and unlawfully divert said water, and deprive plaintiffs of the use thereof, to their permanent and irreparable damage and injury; that defendants claim an interest in said water, and a right to interfere with, abstract, and divert the same, and deprive plaintiffs thereof, but said claim is without any right, etc.; that by means of said wrongful acts of defendants, plaintiffs have been injured, and their crops, orchards, and trees have been destroyed and damaged,— each plaintiff setting out the specific sum in which he or she has been so damaged.   Plaintiffs pray that they may have judgment that they are entitled to the rights of riparian owners upon said stream, and to the use of the water therein, "undefiled and undiminished," for their necessary domestic purposes and for purposes of irrigation; and that defendants

have not had and do not have the right to interfere therewith, or to abstract, develop, or divert any of the water flowing therein, to the damage of plaintiffs; and that defendants be enjoined from further interference with the rights of said plaintiffs in said stream, and from developing the water thereof, against the rights of plaintiffs; and that plaintiffs may have judgment for damages in the sums set out in their several complaints.

In answer to the said several complaints the defendants deny the existence of any natural stream or watercourse upon the premises or lots belonging to plaintiffs, or either of them. Defendants also deny that they have interfered with said stream or watercourse in any way, and further, they deny that plaintiffs, or either of them, or any of their lands, have been injured by any act or acts of defendants whatever. A trial was had without a jury, and on the evidence taken the finding of the court as to the natural watercourse was favorable to plaintiffs. Said finding reads as follows: —

."That at all the times in the complaint, and in the several complaints in intervention herein, there was a natural stream or watercourse running in, through, and under the said lands of the said complainants herein, which stream ran underground through said lands and below said lands to a point about eight hundred feet east of the eastern line of the lands of the intervener Michaud, being the point at which the ditch hereinafter mentioned, made by the defendants, terminated; and at said point a portion of the water of said stream rose to the surface and ran above-ground, and from that point to the Los Angeles River the said stream ran partly above the ground and partly underground, the surface stream increasing in size from the point of its rise above mentioned to the eastern line of lot 44 of the subdivision of the Rancho Providencia and Scott tract, at which line it attained such a size as to be a constant stream running sixty inches of flowing water, miner's measurement; and, when not diverted by artificial means, said surface and subterranean stream has ever since continued to flow to the Los Angeles River in a southeasterly direction from said lot 44, over and through lots 55, 56, and 66 of said subdivision. That said stream is a branch of the stream known as Big Tejunga Creek, and separates from the channel of said creek above lot 20 of said subdivision. Said creek continues from said point of separation southeasterly, in a separate channel, through the

lands of the intervener Clark, and over the southwestern part of the lands of the plaintiff and of the intervener Michaud into said river."

The development works of the defendants, on account of which plaintiffs claim damages, are described in the findings as follows:—

"That on the tenth day of September, 1895, the defendants, John A. Pirtle, George Hanna, George W. Hooper, and William N. Monroe, began an excavation at the eastern line of said lot 44 for the purpose of intercepting and diverting the waters of said first-described stream and carrying the same over a line of hills several miles from these lands, to be there sold for use on other lands situated without the valley and watershed wherein said stream rises and flows. In pursuance of said purpose, said defendants made a ditch along the channel of said stream as the same appeared on the surface, extending from said line of lot 44 up the stream, northwesterly, with the meanderings thereof, a distance of 2,540 feet, the depth thereof at the beginning being about two feet and at the upper end about twenty feet below the natural surface of the ground. In the bottom of said ditch the defendants laid a flume six feet wide, and open at top and bottom. Said defendants continued the construction of said ditch and flume until November 18, 1895, and at that time transferred all their rights and claims thereto to the defendant the West Los Angeles Water Company, and said company continued said work and completed the same on December 15, 1895. By means of said ditch and flume said defendant West Los Angeles Water Company has ever since the completion thereof continuously diverted, and still continues to divert, from said stream or watercourse the water flowing continuously at the rate of eight cubic feet per second, or four hundred inches, miner's measurement, and have carried the same out of the valley aforesaid."

The evidence shows that the excavation made by defendants is on their own land, and entirely below all the lands of plaintiffs on the stream referred to, and is nearly a mile in length. The nearest point of said excavation to any of said lands is the head or upper end thereof, which is about five hundred feet from the nearest point on the Michaud tract. The court also finds that "said defendants have not interfered with the water of said stream. And said diversion has not diminished the volume of said stream above the said ditch, nor affected it

in any way in its course through the lands of the plaintiff and interveners, or either of them, nor caused any injury or damage to them, or either of them."

Appellants' attack on the order appealed from is directed mainly against the finding last quoted. It is strongly urged that this finding is contrary to the evidence. If this contention is well founded, the order should be reversed. On the other hand, if the finding is not contrary to the evidence, the order must be affirmed; for it can make no difference to plaintiffs whether defendants are making an unlawful or improper use of the waters or not, so long as plaintiffs' rights are not interfered with and they are in no way injured. The question, then, is, Was the trial court warranted in making said last finding? The land of plaintiffs is situated in a valley, is of an even, nearly level character, and extends for nearly a mile up the stream, above the head of defendants' excavation or ditch. It slopes gently down stream, and its surface is all the way from about eighteen feet to forty feet above the bottom of the ditch, at its head. Plaintiffs gave evidence tending to show that immediately after the construction of this ditch the water-table began to sink away in plaintiffs' lands, and that it had been sinking away constantly since (except after heavy rains), down to the time of the trial in March, 1897. This lowering of the water level or table was first noticed in wells, and then the alfalfa and the orchard trees showed signs of perishing, and some did perish, for lack of moisture, as the witnesses stated. It is argued on the part of plaintiffs that this failure of water in the wells and of moisture in the earth, rendering the land unfit for raising crops that had theretofore flourished thereon, was the direct and inevitable result of constructing the ditch in question.

On the other hand, the defendants introduced evidence tending to show that there had been a series of dry years in Los Angeles County, and that in 1895, 1896, and in 1897 the water had sunk away in the wells generally, and the crops had been affected, and the water-table in moist lands had been lowered generally, throughout that section of country, as a result of a decrease in the usual rainfall. An engineer bored experimental wells, some thirty-three in number, in the vicinity of the head of defendants' ditch, at various distances and in varying directions therefrom, and from these wells he constructed a profile of the water-table in the vicinity of said ditch, and gave it as

his opinion that the water-table could not be affected by the ditch at a distance of more than four hundred feet therefrom. This opinion was concurred in by another engineer on behalf of defendants, and disputed by others on behalf of plaintiffs. The evidence as to these experimental wells and the profiles drawn therefrom was placed before the trial court. It should be kept in mind that the burden of proof was upon plaintiffs to show to the satisfaction of the court that the subterranean stream through their premises had been interfered with, to their injury, by defendants. The question of fact was from its very nature difficult and hard to determine. The evidence was of the circumstantial or inferential kind, — much of it vague and uncertain. Certainly, the trial court was in a better position than this court can be to determine these questions of fact. This court is warranted in interfering with the decision of the trial court as to a question of fact only when there is no substantial evidence to support the finding.

We see no reason to interfere with the findings of the trial court, and as they are decisive of the case, the order appealed from should be affirmed, and it is so ordered.