142  437<br>144  588<br>144  589

[L. A. No. 1207. Department Two.—March 9, 1904.]

## EMILIE G. COHEN, Appellant, v. LA CANADA LAND AND WATER COMPANY et al., Respondents.

WATER-RIGHTS—PERCOLATING WATER—SPRINGS ON PUBLIC LAND—AP-
PROPRIATION—DIVERSION FOR SALE—DAMAGES—INJUNCTION.—Where
water percolating in springs on public land above plaintiff's land,
and flowing therefrom, was appropriated for use upon plaintiff's
land by means of pipes, plaintiff may recover damages for the di-
version of the water from such springs for sale and use on distant
lands, with consent of a subsequent owner of the land on which
the springs were situated, and may enjoin such diversion to plain-
tiff's injury.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. D. K. Trask, Judge.

The facts are stated in the opinion of the court.

Montgomery & Earle, and Alfred H. Cohen, for Appellant.

Anderson & Anderson, and W. S. Wright, for Respondents.

McFARLAND, J.—This is an action to have it adjudged that plaintiff is entitled to the use of certain water, to re-cover damages for alleged diversion thereof, and to enjoin defendants from diverting the same; and the main issue in the case is whether or not the defendants had the right to destroy or materially diminish the flow of water from certain flowing springs belonging to plaintiff by means of tunnels dug by defendants near and under said springs. The judgment of the court below, although nominally in favor of plaintiff as to some matters, was substantially in favor of defendants on the said main issue. Plaintiff appeals from the judgment and from an order denying her motion for a new trial.

At the time of the commencement of the action, and at the time of the alleged wrongful acts of defendants, plaintiff was, and for many years prior thereto she and her predecessors in interest had been, the owners of certain described land through which runs a ravine or cañon called Snover Cañon. This land is to a large extent agricultural in character, and has been cultivated by plaintiff and her predecessors in orchards, etc., and upon it they have a large house, called Gould's Castle, with flower-gardens, ornamental trees, etc. In Snover Cañon there flows a small stream of natural water, which was used by her and her predecessors to irrigate their orchards, and which is necessary to their maintenance and for domestic purposes at such house. This stream is fed to a considerable extent by certain flowing springs, some of them along the thread of the stream and others a little above in the banks, the waters of which flow in a well-defined stream down into the cañon. These springs, or at least most of them, are situated a little above the upper line of plaintiff's land. But about 1891, when the land on which they are situated was United States unappropriated public land, plaintiff's predecessors appropriated the waters of the springs and carried them by pipes, etc., to the said house and orchard, and used them there for domestic and irrigating purposes. The court found that such appropriation had been made and had not been abandoned, and that "plaintiff is entitled to use all of the water flowing from said springs, or that may hereafter flow from said springs, or that may flow in any stream down Snover Cañon, and defendants are not entitled to the use of such water flowing from said springs, or that may flow in said stream." In the latter part of 1898 and the early part of 1899 the defendants went upon the land where these springs are, with the consent of those who then owned that land, and dug several tunnels at, near, and under said springs, and the effect of these tunnels clearly was to entirely dry up some of the springs, and to greatly diminish the flow of water from the others. The water obtained by defendants by and through these tunnels is not used, nor intended to be used, by them for the benefit of the land on which the tunnels were dug, but is taken to other and non-riparian lands for sale. The court found "that part of said waters which were developed in said tunnels would, except for said tunnels, find its way by

some unknown subterranean means to said springs and be discharged therefrom.'' But it also found that ''neither of said tunnels intercepted any *known stream* of water running in any defined channel,'' and ''that said springs are not nor is either of them fed by any known stream *running in a defined channel'';* and for these reasons the court held, in substance, that the loss to plaintiff consequent upon the destruction of the springs, or the diminution of the quantity of water flowing therefrom, caused by defendant's tunnels, was *damnum absque injuria,* and without remedy. This view, taken by the learned judge of the court below, no doubt was to a great extent justified by the somewhat uncertain condition of the law on the subject at the time of the trial of this cause. There was then considerable authority to the point that underground water not shown to be in the form of a subterranean ''stream,'' but merely ''percolating,'' was a part of the soil, and could be removed by the owner of the land at his pleasure, without consideration of the adjoining proprietors, although there was not much authority to the point that he could take it entirely away from the land for commercial purposes elsewhere. But since the trial of the cause in the court below, it has been definitely settled by this court in *Katz* v. *Walkinshaw,* 141 Cal. 116, and subsequent cases, that the question whether one can maintain an action for deprivation of the use of the water by the act of another does not depend upon the fact that the deprivation was caused by the tapping or intercepting of a known stream running in a defined channel, either on the surface or underground. In such an action it is sufficient for the plaintiff to show that wrongful acts of the defendant complained of did actually deprive plaintiff of water to the use of which he was legally entitled; and if these acts consisted of subsurface excavations it is not necessary for the plaintiff to show that a well-defined subterranean stream had been intercepted, or to show the particular subterranean conditions which were disturbed, provided it clearly appears that the acts of the defendant caused the destruction or diminution. And it has been established by these cases that the right of an owner of land to use water percolating therein is a right only to a reasonable use thereof for the benefit and enjoyment of his land, and subject to the maxim *Sic utere,* etc., and does not include the right, by ex-

cavations, to diminish the flow of water to others where the diversion is not for a reasonable use on his own land. It would be useless to restate the principles and reasoning by which these conclusions are established; they are fully stated in both the opinions in *Katz* v. *Walkinshaw*—the one by Temple, J., (141 Cal. 138,) and the other by Shaw, J., (141 Cal. 120). In the recent case of *McClintock* v. *Hudson*, 141 Cal. 275, the facts there being very similar to the case at bar, the subject is again somewhat elaborately discussed, and the court, among other things, said: ''The case of *Katz* v. *Walkinshaw*, decided November 28, 1903, establishes a rule with respect to waters percolating in the soil, which makes it to a large extent immaterial whether the waters in this land were or were not a part of an underground stream, provided the fact be established that their extraction from the ground diminished to that extent, or to some substantial extent, the waters flowing in the stream. By the principles laid down in that case it is not lawful for one owning land bordering upon or adjacent to a stream to make an excavation in his land in order to intercept and obtain the percolating water, and apply such water to any use other than its reasonable use upon the land from which it is taken, if he thereby diminishes the stream and causes damage to parties having rights in the water there flowing.''

As the court below decided this case upon a theory opposed to the one above stated, it no doubt did not consider itself called upon to be very careful about making findings which would have been necessary to a judgment upon plaintiff's theory; and the findings are not full and specific enough to warrant this court in ordering a judgment for plaintiff. We can therefore only render a judgment of reversal. It will be the duty of the court below to find specifically to what extent —under the views of the law hereinbefore expressed—the defendants have by their said tunnels and excavations diminished the flow of the water through the said springs, and to render judgment in favor of plaintiff for such damages and injunction as the facts found may show to be proper.

The judgment and order appealed from are reversed.

Lorigan, J., and Henshaw, J., concurred.