[L. A. No. 2334.  In Bank.—December 1, 1909.]

## VICTORIA HUDSON et al., Appellants, v. ELLA M. DAILEY et al., Respondents.

WATER-RIGHTS—ACTION TO QUIET TITLE AND ENJOIN DIVERSION—SUPPORT OF FINDINGS.—In this action to quiet title to two hundred and fifty inches of the waters of San Jose Creek, and to enjoin the diversion thereof by the defendants, it is held that the findings for the defendants, so far as may be necessary to support the judgment in their favor, are sustained by sufficient evidence.

ID.—DEED PARTITIONING MEXICAN RANCHO—EFFECT OF COVENANT AS TO STREAM.—Where two owners of a Mexican rancho containing the body of San Jose Creek, made a deed partitioning the land between them, in which they mutually covenanted that notwithstanding the partition, "the rights to the use and benefits of the waters of the San Jose Creek flowing into said Rancho de la Puente or arising thereon, whether for water power, irrigation, or other purposes, shall continue and remain as heretofore, to be had, held, possessed and enjoyed by the parties in equal shares, and in their heirs and assigns," the effect of such covenant is to bind the successors of one party against the successors of the other, but not to bind the successors of one owner as between themselves.

ID.—EFFECT OF COVENANT UPON GRANT OF NON-RIPARIAN LAND.—The covenant does not necessarily secure riparian rights to a subsequent grantee of non-riparian lands if not so provided in the conveyance, and if no circumstances are shown raising an estoppel.  The mere fact that it was part of the rancho to which riparian rights had extended while the ownership was continuous from it to the banks of the stream, would not preserve that right to the severed tract.

The severance under circumstances not showing a contrary intent would cut off such tract from its riparian rights.

ID.—NATURE OF STREAM—UNDERGROUND FLOW—WELLS OF UPPER RIPARIAN OWNERS—IMMATERIAL FINDING AGAINST EVIDENCE—IMPERVIOUS STRATUM.—Where the evidence clearly shows that it is the nature of the stream, in flowing from mountain sources through a valley, to have an underground flow in strata connected with the surface stream and forming a part of it, a finding against evidence that some of the underground flow is in a stratum impervious to the stream, and that wells sunk by riparian owners above take from this impervious stratum, is immaterial, where other findings clearly show that such wells materially diminish the customary flow from other strata to plaintiff's land below.

ID.—UNLAWFUL DIVERSION NOT JUSTIFIED.—If the wells and pumping plants of defendants constitute an unlawful diversion of the stream, it would be no defense that they also took water from another source.

ID.—REASONABLE USE BY UPPER RIPARIAN OWNERS—ISSUE AS TO EXCESSIVE USE NOT TENDERED—DATA FOR APPORTIONMENT UNSUPPLIED—CASE NOT SHOWN.—Where the court found that no defendant takes or uses more water in wells than is necessary for irrigation and domestic use on his land, if it be conceded that the supply is shown to be insufficient for all riparian owners, yet, as plaintiff has tendered no issue as to excessive use by them from a common source of supply, and has supplied no data for a decree apportioning the stream between the parties, and has relied on a paramount right, it follows that if defendants are entitled to a reasonable use of the underground flow as upper riparian owners, plaintiff has shown no case against them.

ID.—RIPARIAN RIGHTS AS TO UNDERGROUND FLOW.—Where two or more persons own different tracts of land underlaid by porous material extending to and communicating with them all, which is saturated with water moving with more or less freedom therein,. each has a common and correlative right to the use of this water upon his land, to the full extent of his needs if the supply is sufficient, and to the extent of a reasonable share thereof, if the supply is so scant that the use by one will affect the supply of the others.

ID.—PRESUMPTION AGAINST UNREASONABLE SHARE BY UPPER OWNERS—BURDEN OF PROOF.—The presumption is against the taking of an unreasonable share of the ,underflow by upper riparian owners, and the burden is upon the plaintiff, as a lower owner, to prove that it is unreasonable, and such burden being unsustained, plaintiff cannot prevail against them.

ID.—UNDERGROUND FLOW CONNECTED WITH SURFACE STREAM—RIGHTS OF UPPER OWNERS—PRESCRIPTIVE TITLE NOT TENABLE.—If the underground flow is connected with and is a part of the surface stream, defendants as upper owners have a common right with plaintiff below to the flow of the stream; and the rights of the defendants cannot

be lost by disuse, nor can the plaintiff below acquire adverse user or a prescriptive title as against them by taking the water after it passes their lands.

Id.—RULE AS TO PERCOLATING WATER.—The owner of land in which there is percolating water which feeds a stream issuing upon other land below, has a right to the use of the percolating water on the overlying land, which is a right in common with the riparian owners on the stream fed by such percolations. If the supply is not enough for all, each is entitled to a reasonable share.

Id.—PRESCRIPTIVE TITLE ACQUIRED BY ADVERSE CLAIMANT.—Where an upper adverse claimant had diverted the waters of the creek for many years by means of a dam and ditch, and sunk wells more than five years before suit to protect his appropriation and had used such wells adversely to the plaintiff and to the knowledge of the plaintiff for the full period of limitation and pleaded the bar of the statute, the action is clearly barred as to him.

Id.—SMALL WELL BORED WITHIN FIVE-YEAR PERIOD—SUBSTANTIAL INJURY NOT SHOWN JUSTIFYING INJUNCTION.—Where it appears that a small well was bored within the five-year period, but the court finds that the flow from it is very small, it will be presumed from the findings and judgment that the quantity was negligible, and did not show a substantial injury justifying an injunction.

Id.—CREATION OF PUBLIC NUISANCE BY ADVERSE CLAIMANT—BAR OF STATUTE NOT DEFEATED.—The fact that the adverse claimant created a public nuisance by allowing his artesian wells to go uncapped in the winter season cannot preclude his obtaining a prescriptive title by adverse user during the irrigating season. A private owner, if specially injured, may sue for damages for such nuisance, but he cannot invoke the public right which is not barred, and thus avoid the effect of the statute of limitations upon his private right.

Id.—EFFECT OF WASTE UPON UNDERGROUND STRATA NOT PLEADED.—Whatever may be the effect of such waste to diminish the underground flow during the irrigating season, by decreasing the pressure thereon, and whatever, cause of action plaintiff may have upon that ground, no such waste being pleaded, he cannot rely upon a cause of action of that character.

Id.—RUNNING OF STATUTE OF LIMITATIONS.—The running of the statute of limitations in favor of the defendant pleading the statute was not deferred until the extraction of the water had begun to diminish the flow at plaintiff's dam, but ran from his diversion, where it appears that plaintiff had knowledge of the flow from the wells immediately and that it would tend to diminish such flow, and that the effect was immediately perceptible.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Haas, Garrett, & Dunnigan, for Appellants.

John D. Pope, and Ward Chapman, for Respondents.

SHAW, J.—The plaintiff, Victoria Hudson, alleges that she is the owner of seven hundred and sixty acres of land in the Rancho de la Puente, that said land is riparian to a stream of water known as San Jose Creek and is entitled to riparian rights therein, and to receive of its waters for use thereon a flow of two hundred and fifty miner's inches of water, that the water of said stream is directly supplied to it from the saturated soils and gravels of the valley through which it runs, that the defendants have bored a number of wells in said valley from which, some by artesian pressure and some by pumps, but all without right, they obtain large quantities of the waters which feed said creek and appropriate the same to their own use, thereby depleting the stream flowing in the creek to the extent of three hundred miner's inches, and depriving the plaintiff of the waters thereof, and that they claim the right to continue this use of the waters lying beneath their lands. She prays for a decree quieting her title to two hundred and fifty miner's inches of water of the creek, and enjoining the defendants from pumping and using the water of said wells to an extent that will prevent a sufficient flow of water in said creek to supply her with said quantity therefrom. The plaintiff, J. W. Hudson, is the husband of Victoria, and has no interest in the suit. In this opinion when we mention the plaintiff we refer to Victoria.

The answer denies many of the material allegations of the complaint. Defendant Currier answers separately, making the additional defense that the plaintiffs' action is barred by the statute of limitations. The action was begun on November 30, 1904. The findings are very full and elaborate. The conclusion of law and judgment was that the plaintiffs take nothing by the suit. A motion for a new trial was denied. The plaintiffs appeal from the judgment and order.

The appellant urges that the findings of the court are, in many particulars, contrary to the evidence. We do not find it necessary to consider all of these specifications in detail.

We are of the opinion that, upon a proper view of the case as presented in the court below, all the findings that are necessary to support the judgment are sustained by the evidence.

San Jose Creek, in its original natural state, had its origin in the Sierra Madre Mountains, from whence it then flowed on the surface of the ground through the plain upon which the city of Pomona is now situated and to and through the San Jose Valley. For many years, however, owing to the diversion and use of the water in Pomona and vicinity, there has been no surface stream in the channel from its embouchure from the mountains down to the upper part of the San Jose Valley, at which point the stream again appeared on the surface and flowed down to the lands of the parties here concerned. It is the theory of the plaintiff that the greater part of the water of the stream, thus rising in the valley, is composed of water which comes from the mountain streams and sinks into the underlying porous strata extending from the foot of the mountains to and into the San Jose Valley and under the lands of the defendants, and which, owing to the narrowing of said valley at its upper end and the consequent elevation of the water plane at that point, rises to the surface and flows in the depression constituting the channel of the creek. Accepting this as correct, the defendants claim that the plaintiff has shown no legal injury, no invasion of her rights, and no ground for relief. The evidence shows that her theory is correct in the main. Some of the water, thus percolating through the underlying strata, comes from rainfall upon the adjacent hills and upon the valley itself and the plain above in the vicinity of Pomona, but this fact does not affect the relative rights of the parties to the water.

There is a finding to the effect that the soils and material of the earth intervening between the respective pumping plants and the creek, "or a considerable portion thereof, are impervious and do not permit the water to pass through them to the creek," that there are different and distinct water-bearing strata underneath the valley surface, between which lie other strata containing no water, and that a part of the water obtained by the defendants' wells is drawn from lower strata which do not feed the creek at the point where the plaintiff obtains her water from it. The plaintiff contends that these

findings are not sustained by the evidence. The finding that
the waters of the lower strata do not feed the creek, flowing
at the plaintiff's dam, is based on the qualified and conditional
opinion of certain witnesses that these lower strata were over-
laid by a blanket of impervious material, throughout the
entire portion of the valley above the dam, through which no
water could rise into the creek and into which no water could
sink from the strata which do feed the creek. It assumes that
there were no breaks or interruptions in this impervious
stratum or blanket, through which the waters could pass from
it to the strata above or below, or from the upper strata
through it. There was no evidence of these facts. If there
was in the valley a single acre where this supposed blanket
did not exist, the opening would be equivalent to an immense
well through which the water would pass from the upper
strata into the lower one, if the water in the latter was ex-
tracted, or would rise into the upper strata if the water in
the upper strata was diminished and there was pressure below,
thus depleting or replenishing, as the case might be, the upper
strata from which the creek water was directly obtained, and
to that extent affecting the flow in the creek. But as the
findings also, in substance, declare that the pumping of the
defendants does, to a material extent, decrease the amount of
water which the plaintiff is able to divert from the creek and
which she needs for the irrigation of her land, the finding
as to the lower strata is immaterial. If the pumping by the
defendants constituted an unlawful diversion of water to
which plaintiff was entitled, it would be no defense that they
also took other water from another source.

Each defendant owns a separate tract of land in severalty.
All of these lands, except those of Currier, lie within the
valley and over the underground porous strata from which
the creek issues. Each of these defendants, by means of wells
and pumps, takes water from the strata and uses it upon his
tract of overlying land. These are the diversions complained
of and shown by the evidence. These, coupled with other sim-
ilar diversions and uses in Pomona and vicinity and a series
of ten unusually dry years immediately preceding the action,
have caused the stream flowing upon the surface in the creek
to diminish to such an extent that, at the plaintiff's place of
diversion from the creek, the flow is much less than it was

formerly and she is thereby deprived of the use of the quantity of water which, for thirty years previously, she had been accustomed to use.

The court found that none of these defendants takes or uses more water in this way than is necessary for irrigation and domestic use on his particular tract of land. In her briefs the plaintiff practically concedes that this finding is correct. There is no direct evidence to show whether or not the underground supply is insufficient for all demands upon it. If we concede that the circumstances show that it is not sufficient for all, we are then met by the proposition that there was no evidence to prove that said defendants, or any of them, have ever taken more than a reasonable share of such water. The plaintiff tendered no issue of that character. The complaint asserts a paramount right in the plaintiff, superior to that of the defendants. There is no attempt to present a case of excessive use by a defendant entitled to share in a common supply, or to obtain a decree apportioning the waters of the valley among the parties. The evidence does not supply the data necessary to apportion the water to which each party is entitled. If these defendants are entitled to a reasonable share of this underground water, the plaintiff has shown no case against them.

The lands of the plaintiff and of all of the defendants, except Currier and Ybarra, were originally a part of the Rancho de la Puente. This ranch consisted of about forty-nine thousand acres of land, including practically the whole of the San Jose Valley, and was granted by the Mexican government to John Rowland and William Workman. In 1868 these two owners made a mutual deed of partition thereof containing the following covenant: "And it is mutually agreed and covenanted that notwithstanding this partition hereby made, the rights to use and benefits of the waters of the San Jose Creek flowing into said Rancho de la Puente or rising thereon, whether for water power, irrigation or other purposes, shall continue and remain as heretofore to be had, held, possessed and enjoyed by the parties in equal shares and to their heirs and assigns."

The plaintiff's land and all the lands in said rancho belonging to the respective parties are held by title derived from the parties to this deed and covenant.

At the time the Rowland-Workman deed was executed, the ditch and dam which the plaintiff now uses was in use and by means thereof the water of the creek was carried to the plaintiff's land. It is contended that the effect of the covenant aforesaid was to bind each of the parties and their successors in interest to maintain his land in such condition and make only such use thereof as would enable her to continue to obtain from the stream by said dam and ditch the same amount of water that was then taken therefrom and used on her land, and that the extraction of the underground water and consequent diminution of the flow in the creek is a violation of the covenant. We do not think it was intended to have that effect, but that it merely divided the rights to the water into equal shares between them, regardless of frontage on the stream or other circumstances affecting the amount to which each would have been entitled. But, conceding that it would have the effect as contended, between the successors of Rowland as against the successors of Workman, it would have no effect whatever between purchasers of different tracts from the same original owner. Purchasers from Rowland of different parts of the land allotted to him could not claim the benefit of this covenant, as against each other. The plaintiff claims under Rowland. She does not show that the defendants owning parts of the Puente Ranch do not also claim under him.

We cannot determine from the findings or evidence whether the tracts of land in this rancho, now owned by the several defendants and not contiguous to the surface flow of the creek, are entitled to riparian rights in the surface stream or not. The covenant above mentioned does not necessarily secure it to them. A subsequent conveyance by one of the original owners, of a part of the tract not abutting upon the creek, would not carry any riparian or other right in the creek, unless it was so provided in the conveyance, or unless the circumstances were such as to show that parties so intended, or were such as to raise an estoppel. If the tract conveyed was not contiguous, had never received water from the creek, and there were no ditches leading from the creek to it at the time of the conveyance, nor other conditions indicating an intention that it should continue to have the riparian right, notwithstanding its want of access to the stream, the mere

fact that it was a part of the rancho to which the riparian right had extended while the ownership was continuous from it to the banks of the stream, would not preserve that right to the severed tract. The severance under such circumstances would cut off such tract from the riparian right. (*Anaheim W. W. Co.* v. *Fuller,* 150 Cal. 331, [88 Pac. 978].) The record does not show where these lands lie with respect to the stream, nor what were the covenants in the deeds by which they were segregated from the entire tract, nor the conditions then existing with respect to the use of the water. The court finds that each of said defendants, before he resorted to the use of wells and pumps had been accustomed to receive and use on his land some of the water from the creek and that they each resorted to pumps and wells because of the diminution of the surface flow, but the conditions of such use, and the nature of the right under which it was had, are not shown except by the statement that it was water "which they had appropriated and used for many years." How long the use had continued does not appear. The court finds that the wells of Currier, Persons, Dailey, and Howell were bored and had been in operation more than five years before the action was begun. This defense will be considered hereafter. The other defendants cannot justify their taking of the underground water as a continuation of the riparian use recognized by the covenant in the Rowland-Workman deed, nor as an indirect exercise of a prescriptive right previously acquired by them in the flow of the creek, for they do not appear to have acquired a right of either character.

It appears, however, that the lands of all defendants except Currier are situated over the strata from which they obtain water and from which the creek is also supplied. The irrigated lands of the plaintiff are over the same strata. Defendants' lands are far above the plaintiff's place of diversion from the surface stream and they use the water only upon their overlying lands. The general rule, as now established by the decisions of this court, undoubtedly is that where two or more persons own different tracts of land, underlaid by porous material extending to and communicating with them all, which is saturated with water moving with more or less freedom therein, each has a common and correlative right to the use of this water upon his land, to the full extent of his needs if

CLVI Cal.—40

the common supply is sufficient, and to the extent of a reasonable share thereof if the supply is so scant that the use by one will affect the supply of the others. (*Katz* v. *Walkinshaw*, 141 Cal. 134, 144, 150, [99 Am. St. Rep. 35, 70 Pac. 663, 74 Pac. 766]; *McClintock* v. *Hudson*, 141 Cal. 281, [74 Pac. 849]; *Cohen* v. *La Cañada etc. Co.*, 142 Cal. 439, [76 Pac. 47]; *Montecito etc. Co.* v. *Santa Barbara*, 144 Cal. 585, [77 Pac. 1113]; *Burr* v. *Maclay etc. Co.*, 154 Cal. 434, [98 Pac. 260]; *Barton* v. *Riverside Water Co.*, 155 Cal. 509, [101 Pac. 790].) Applying this rule, and assuming for the present that the right of the plaintiff is not paramount to that of the others, there can be no doubt that the taking of a part of the underground waters by the defendants is not unlawful, unless they take an unreasonable share thereof. As there is no presumption that the part so taken by any defendant exceeds his reasonable share, it would be incumbent upon the plaintiff to prove it, and as she had made no attempt to do so, she cannot prevail against them.

She insists, however, that her right is paramount to that of the defendants to the use of these underground waters. Her land, or the part of it upon which she uses the water, is riparian to the creek. She, and her predecessors in interest, by means of a dam and open ditch, have diverted the water from the creek at a point below any of the lands of the defendants, and have used it upon her land ever since the year 1868, under claim of right, to the extent of about two hundred and fifty miner's inches, whenever the stream was large enough to furnish that amount. The diversions of the defendants by their wells have materially contributed to the diminution of the surface stream, and have, to that extent, deprived her of the water to which she is entitled, if her right is superior to theirs. The question is thus presented whether or not the rights of a riparian proprietor, to the waters of a stream, extends to the subterranean waters above from which the stream proceeds, and are paramount to that of the owners of the lands which overlie those subterranean waters.

If the water in the underground strata is in such immediate connection with the surface stream as to make it a part of the stream, as the plaintiff seems to contend, then the defendants' lands overlying such water must be considered as also riparian to the stream, and, under the law of riparian rights,

they have a common right with the plaintiff to the use of the water. In that case her use would not be adverse to them, they would not lose their right by disuse and their taking of a reasonable share would be lawful. (*Coleman* v. *Le Franc,* 137 Cal. 217, [69 Pac. 1011].) In *Verdugo etc. Co.* v. *Verdugo,* 152 Cal. 664, [93 Pac. 1021], a different rule was applied because in that case the right of the party taking the surface stream was paramount to the right of the other riparian owners along its course. It was made paramount by the force of a decree in partition setting apart the surface stream to the use of a particular tract of the land, exclusively, and consequently divesting the other lands of all right to the stream and giving the person owning the land to which it was assigned the right to have its flow preserved undiminished. The rule which in that case was declared to apply to such of the underground waters as might prove to be unnecessary to the preservation of the surface stream, that is, that all the parties having access to it would have the right to share reasonably in its use, is the rule applicable to the case at bar, if plaintiff has no paramount right. But the plaintiff insists that, by continuous use since 1868, she had gained a prescriptive right to the water of the stream, which, she claims, is paramount to said rights of the defendants, at least to the extent that they may not extract the underground water in such quantities as to deplete the surface stream to her injury. If this water is a part of the stream this claim is also untenable. The defendants, as riparian owners, would not lose their rights by disuse. Her use of the water, after it had passed through their lands and become part of the surface stream, would not injure them, nor constitute a trespass upon their property, and, hence, it would not be adverse to them and could not be the foundation of a title by prescription as against them. (*Hargrave* v. *Cook,* 108 Cal. 78, [41 Pac. 18] ; *Bathgate* v. *Irvine,* 126 Cal. 140, [77 Am. St. Rep. 158, 58 Pac. 442] ; *Cave* v. *Tyler,* 133 Cal. 568, [65 Pac. 1089].)

There is also a claim that this underground water, as to a great part of the lands, has not the characteristics of a stream, but must be classed as percolating water. There will always be great difficulty in fixing a line, beyond which the water in the sands and gravels over which a stream flows and which supply or uphold the stream, ceases to be a part thereof and

becomes what is called percolating water. Undoubtedly the water in the lands of many of the defendants would be of the class ordinarily designated as percolating water. It is therefore important to determine the relative rights of the owner of the non-riparian land containing percolating water, which feeds a surface stream, and those who have acquired riparian or prescriptive rights in said stream, where the pumping of such percolating water and its use on the land in which it is found will diminish the surface stream, to the injury of those having such riparian or prescriptive rights therein.

The owner of land has a natural right to the reasonable use of the waters percolating therein, although it may be moving through his land into the land of his neighbor, and, although his use may prevent it from entering his neighbor's land or draw it therefrom. This right arises from the fact that the water is then in his land so that he may take it without trespassing upon his neighbor. His ownership of the land carries with it all the natural advantages of its situation, and the right to a reasonable use of the land and everything it contains, limited only by the operation of the maxim *sic utere tuo ut alienum non laedas*. It is upon this principle that the law of riparian rights is founded, giving to each owner the right to use the waters of the stream upon his riparian land, but limiting him to a reasonable share thereof, as against other riparian owners thereon. We think the same application of the principle should be made to the case of percolating waters feeding the stream and necessary to its continued flow. There is no rational ground for any distinction between such percolating waters and the waters in the gravels immediately beneath and directly supporting the surface flow, and no reason for applying a different rule to the two classes, with respect to such rights, if, indeed, the two classes can be distinguished at all. Such waters, together with the surface stream supplied by them, should be considered a common supply, in which all who by their natural situation have access to it have a common right, and of which they may each make a reasonable use upon the land so situated, taking it either from the surface flow, or directly from the percolations beneath their lands. The natural rights of these defendants and the plaintiff in this common supply of water would therefore be coequal, except as to quantity, and correlative.

There is nothing in the facts alleged or proven, giving to the plaintiff any paramount or superior rights in these waters. There is no evidence that she had ever used or diverted the water in such a manner as to interfere in any way with the use of the percolating water by the defendants or so as to make her use adverse to them and give her a prescriptive right against them for the amount she was accustomed to use. She and they alike must depend solely on their natural rights for the determination of the quantity they may take from this common supply. As she has failed to allege that they have taken or threaten to take more than a reasonable proportion of the water, and as she had no right superior to theirs, she has not established a cause of action against them with respect thereto.

The brief of the plaintiff presents numerous details wherein it is claimed that the findings are to some extent unsupported by the evidence. None of them, however, go to the merits of the case, except those we have discussed and those as to which we have assumed that the facts are as the plaintiff contends they should have been found. It is unnecessary to consider them further. None of them in any wise affects the conclusions we have stated.

The lands of the defendants, Ybarra and McClintock, are not within the Rancho de la Puente but are within the San Jose Valley and are situated over the same underground strata as the other lands hereinbefore mentioned. All that has been said with regard to the natural rights belonging to the lands of the other defendants applies with equal force to these lands. The facts are the same and the plaintiff has failed to establish a cause of action as to them.

The case against the defendant Currier stands upon different grounds. He pleaded the statute of limitations and the finding of the court is that the action was barred as against him. This finding is sustained by the evidence. He had diverted the water of the creek continuously and adversely to the plaintiff, under claim of right, and used it on his land for many years before the suit was begun, by means of a dam and ditch. The flow of the creek decreased, and being unable to obtain therefrom the waters he needed he put down seven wells in the bed of the creek, from three of which he obtained water equal to the quantity to which he had previously ob-

tained the right by such adverse use. These wells were sunk more than five years before the action was begun. The evidence shows that the plaintiff knew of such use and knew that the flow in the creek immediately decreased. By reasonable inquiry she could have ascertained that the decrease was caused by the wells. Under these circumstances the action is clearly barred. Another well was bored by him within the five-year period. The court finds that the water flowing from it was very small. In order to make a case for an injunction it was necessary for the plaintiff to show substantial injury. She introduced no evidence of the quantity discharged from this well, resting it upon the testimony of the defendant that it was very small, as the court found. In support of the finding and judgment we will presume that the quantity was negligible and the injury to the plaintiff therefrom too slight to justify an injunction.

The wells of Dailey, Persons, and Howell having been also in use for more than five years, the action as against them would be barred by laches. The facts as to them were alleged in defense, but there was no plea of the statute of limitations on their behalf.

The evidence shows that Currier left his artesian wells uncapped and permitted the water therefrom to flow down the creek channel unused, so far as he was concerned, during the winters, when it was not needed. Plaintiff claims that this was a violation of the statute of 1878 (Stats. 1877-8, p. 195), declaring any uncapped artesian well from which water was permitted to flow and run to waste to be a public nuisance, and making it a misdemeanor in the owner of such well to permit such waste, and that, as the right to maintain a public nuisance cannot be gained by adverse use, the finding that the plaintiff's action, as against Currier, is barred by limitation, is erroneous. We cannot say that a private prescriptive right to private property may not be obtained by means of acts which may also constitute or cause a public nuisance. The private owner who is injured has a right of action in case of special injury, and such right is barred in the same manner as other actions of like nature. A private owner, so injured, cannot invoke the protection of the public right to abate the nuisance, which is not barred, and thus avoid the effect of the statute of limitations upon his private right of action. A

further sufficient answer to this point is that the water from these wells did not go to waste during the irrigating season. The fact that it was allowed to flow without use during the winter when it was not needed for use by any one, might make the uncapped wells a public nuisance during that season, but it would not have that effect during the time when the water was used, nor would it prevent Currier from acquiring, by adverse use during the regularly recurring irrigating seasons, the rights to divert the water by the wells during that season.

It may be that the effect of allowing the water to flow from said wells during the winter is to unnecessarily lower the water and decrease the pressure in the underground strata and thereby reduce the creek flow during the ensuing irrigating season, or part of it, and possibly the plaintiff may have a cause of action to prevent such diminution from that cause. But the complaint does not allege such waste, and without such allegation it does not state a cause of action of that character.

There is no foundation for the proposition that the statute of limitations would not begin to run in favor of Currier, with respect to his right to maintain wells, until the extraction of water by his wells had begun to diminish the flow at the plaintiff's dam. The evidence shows that the effect was perceptible at the dam immediately and that the plaintiff had knowledge of the flow from the wells and the use thereof by Currier from the beginning. This was sufficient to charge her with notice that the tendency of the diversion of the flow at those wells would be to reduce the amount in the stream below and to start the statute of limitations running.

There are no other points deserving of consideration.

The judgment and order are affirmed.

Henshaw, J., Sloss, J., Lorigan, J., Angellotti, J., and Melvin, J., concurred.