[No. 5851.]

## JOS. P. HALE *v*. DONALD McLEA.

RIGHTS IN SUBTERRANEAN STREAM.—On the facts of this case, as admitted by the pleadings or found by the Court, the defendant could, at most, exercise no greater rights in respect to the diversion or use of the waters of the subterranean stream flowing across his land to the spring of the plaintiff, than if he had been an upper and the plaintiff a lower riparian owner on a surface stream flowing across their respective lands.

SAME.—On the facts admitted or found, the defendant was not entitled to divert the whole body of the stream.

QUERY AS TO UPPER AND LOWER PROPRIETOR.—Whether the upper proprietor on a subterranean stream can exercise the same rights as against a lower proprietor in respect to the diversion and use of the water, as though it was a surface stream, not decided.

QUERY AS TO CAUSE OF ACTION.—Whether the incidental obstruction or diversion of a subterranean stream, in the prosecution by an upper proprietor of a mining or other legitimate enterprise beneath the surface, can be made the foundation of an action by a lower proprietor, not decided.

APPEAL from the District Court of the Twentieth Judicial District, County of Santa Clara.

The complaint alleged that for more than seven years the plaintiff had been the owner and in possession of a tract of land situated in Santa Clara County, State of California, now known as Hale's Ranch; that the westerly line of the ranch crosses a

high, narrow ridge of land, and just inside the line on the land and on the ridge there had always been, up to October 30th, 1875, a living, flowing, natural spring of water; that the waters that flowed therefrom had always, continuously up to said October 30th, 1875, flowed in a well defined channel on said land from said spring; that during all of the time the plaintiff was the owner of the land previous to October 30th, 1875, he openly, continuously and notoriously, and adversely to all the world, used and appropriated the waters of said spring, and the waters that flowed in the channel therefrom; that the spring and channel had always thus existed in a state of nature, and nature bestowed upon the land the said spring, and the benefits thereof; that the plaintiff purchased the land by reason of the spring being thereon; that the defendant is, and for more than seven years last past has been, the owner and in possession of a tract of land adjoining the boundary line of plaintiff; that said spring was always supplied with its waters from a well-defined flowing subterranean stream of water, which crossed the said boundary line from defendant's land a few feet below the surface; that on or about October 30th, 1875, the defendant threatened to excavate on his land just inside said line, and cut off the subterranean stream, and appropriate the waters thereof to his own use; and in pursuance of that threat, and for the sole purpose of robbing and depriving said spring of the waters that had been accustomed to flow therein and thereout, and of causing the waters of said subterranean stream to issue out of his own land for his cattle, which he, during all the time he owned the land, had thereon, he (the defendant) thereupon did, about two rods from said spring, dig down in his said land to said subterranean stream and cut off the same, and then and there caused and has ever since caused the whole of the waters flowing therein to flow from such point where the same was so cut off to the surface of defendant's land on the side of said ridge through pipes then and there laid by defendant for that purpose, and by reason of which no waters have since flowed into said spring, and the same has ever since been dry; that a portion of said waters since the time of diversion have been used by defendant in watering his cattle, and the rest has run to

waste; that if the diversion is continued, plaintiff will suffer irreparable injury, etc. The prayer was for an injunction.

The answer denied threatening to excavate for the purpose of cutting off the stream; but averred that, finding himself without water for his cattle, and seeing indications of water on his own land, some eleven or twelve feet from said boundary line, and not knowing of any subterranean or other stream of water existing, but thinking that by digging on his own soil he might obtain water by percolation or otherwise sufficient for the use of his stock, then and now pasturing on said land, he, about the 30th day of October, 1875, caused to be dug a trench or ditch into said hill and in the direction where the indications of water appeared; and that afterwards by so doing he did obtain a sufficient supply of water for the use of his stock, and caused the same to be carried into the troughs by him provided; that after the use of said water by the stock of defendant the same ran upon the land of plaintiff, and if the said surplus water is properly cared for by the plaintiff it would be ample to supply all the wants of his stock or cattle pasturing on his land; and that the said digging is the matter set forth in the complaint of plaintiff, and not other or different.

The Court found : That the plaintiff and defendant were the owners of coterminous tracts of land. In the vicinity of the division line running north and south between the parties is the subject of the controversy. Upon the side of a ridge, upon the land of plaintiff, at a point about twenty-eight feet east of the land of defendant, a natural spring flows from the surface of the ground. This spring is a small one, furnishing a very small supply of water. It has been utilized by the plaintiff for many years, and the water conveyed to troughs, furnishing water for the stock of the plaintiff. The spring furnishes the principal supply of the plaintiff's farm at this point, and is the only water he has for the cattle that pasture upon this part of his land. He also proposes to use and will require this water for a proposed residence he intends to soon build. From this natural spring upon the land of plaintiff, extending toward the west, and upon the land of defendant, a line of bushes usually found nowhere except over water-courses appeared, but there

was no other indication of a subterranean stream upon defend-
ant's land at this point than that indicated by these bushes.
There was no stream upon the surface, and no depression or
channel whatever appeared upon the surface of either tract at
this point, and the surface of the ground was rocky and dry.
The line of bushes above referred to was connected and frequent
up to the line of the division fence, and was upon a general
continuous line extending from this fence to and upon the land
of defendant, and to the pit there sunk by defendant. In Octo-
ber, 1875, defendant dug a trench upon his land, about eleven
feet from the division line. The trench was parallel with the
division line, and at right angles with the line of bushes, and
was dug for the sole purpose of intercepting a subterranean
stream which defendant supposed flowed to the spring of plaint·
iff. Any person of ordinary judgment would have expected to
intercept the stream at this point, from the apparent situation
and surroundings.

The trench was started at the surface of the ground, and ex-
tended southerly, with a grade to flow water through. When
it reached the line formed by the bushes, it was nine feet below
the surface of the ground. At this point, and at the bottom,
the trench was in a decomposed rock, intersected with small
fissures. At the bottom of the trench, and upon the western
side, was found a fissure of loose, fragmentary rock, of which
the hill was chiefly composed. Through these fragments, at
this particular point, flowed a small stream of water. The de-
fendant opened this pit, and connected it with pipes laid through
the trench, and so arranged it that all the water flowing in from
the crevice was taken in a pipe through his trench. Immedi-
ately upon the opening of this trench and the laying of this pipe,
the water ceased to flow in the spring of the plaintiff and has
not since flowed there. The defendant in digging this trench
had but one purpose, namely : to secure to himself the subter-
ranean water that he believed existed at this point; he knew
that this was the source of the supply to plaintiff's spring, and
if intercepted, no water would flow to the spring of plaintiff.
He was not actuated by malice.

The remaining facts appear in the opinion. The plaintiff had
judgment, and defendant appealed.

*L. Archer* and *Thos. Bodley*, for Appellant.

The hidden vein of water found percolating or penetrating through the "loose, fragmentary, angular pieces of rock of which the general hill was composed," was not such known underground water flowing in a defined channel as the books speak of, when applying the law governing surface streams.

The source or supply of plaintiff's spring, when exposed by digging the ditch in the hill, is in no wise different from the ordinary and familiar vein that is tapped in digging or boring a well, or excavating for any other purpose. The fact that defendant dug to get water, or that he believed he would get water, or that he believed that the supply of the spring would be stopped, cannot possibly modify or change his rights as owner of the soil *usque ad cœlum et ad infernos*, as he acted without malice or wantonness, and only for the utilization of the resources of his own land.

The history, reason, and application of the principle involved in this case are fully shown by the following authorities and those therein referred to: *Hanson* v. *McCue*, 42 Cal. 307; Washburn's Easements and Servitudes, chap. 3, sec. 7; Angel on Water Courses, sec. 109, and following; *Chase* v. *Silverthorne*, 62 Me. 175; 16 American Reports, 419.

If it were possible to apply to the case at bar the rules which regulate the relative rights and liabilities of land owners in relation to surface water, the judgment would be indefensible. Riparian proprietors, by undoubted principles of law, have the right to reasonably use the water running over or through their premises. Diminution in the quantity of the water alone, nor an alteration in its flow, nor both of these circumstances combined with injury to the lower proprietor, will give a right of action.

The question is one of reasonable use, and if that reasonable use requires all the water, the sufferer can demand no redress. (See *Dumont* v. *Kellogg*, 29 Mich. 420, and cases there cited—Opinion by Judge Cooley.)

In this case the Court finds that "defendant did this," *i. e.*, dug the ditch, "for the purpose of using the water upon his

own place and in order to beneficially employ the same, and was not actuated by any considerations of malice or unkindness toward the plaintiff. · The defendant does beneficially employ the water upon his own place for watering his cattle, and would be greatly inconvenienced by being deprived of the same."

We submit that the weight of authority and reason is greatly in favor of the proposition that the law in such cases will not interfere. We refer the Court especially to the case of *Chase* v. *Silverthorne*, 62 Maine, 162, where the decisions in England and the States are cited and reviewed.

*Moore, Laine & Leib*, for Respondent.

Without naming or examining in detail the authorities relied on by defendant, it is sufficient to say that they all fall within the following clauses, viz: 1. Where the defendant incidentally cut off the water, as where he had been building, mining, improving, cultivating, or making some other use of the land itself, and the water was incidentally diverted thereby. Or 2. Where it was simply a question of two wells, and the fact of there being a natural spring did not exist in the case. Or 3. Where there was a natural spring, but it was supplied by percolation; that is, by oozing or straining through the soil.

But the facts of this case place it entirely without all these classes. *Wheatley* v. *Baugh*, 25 Pa. St. 531, is to the effect that " a subterranean stream which supplies a spring with water cannot be diverted by the proprietor above for the mere purpose of appropriating it to his own use." (*Smith* v. *Adams*, 6 Paige, 435; *Dexter* v. *Prov.*, etc. 1 Sto. C. C. 392–3; Wash. on Easements, 2nd ed. 456–7; Angel on Water Courses, secs. 111 and 112; *Sweet* v. *Cutts*, 9 Am. 282; *Delhi* v. *Youmans*, 50 Barb. 516; *Hanson* v. *McCue*, 42 Cal. 308; *Haldeman* v. *Bruckhart*, 45 Pa. St. 514; *Smith* v. *Adams*, 6 Paige, 433.)

By the Court, CROCKETT, J.:

An examination of the English and American decisions on the questions of law involved in this appeal leads us to the conclusion that, on the facts admitted by the pleadings or found

by the Court, the right of the defendant as against the plaintiff to use the water of the subterranean stream, which is the subject of the action, is at most no greater than if it was a surface stream, on which the defendant was the upper and the plaintiff a lower riparian owner. Tested by this rule, the utmost that can be claimed for the defendant on the facts is, that he is entitled to take from the stream as much water as he needs for watering his cattle and for domestic uses, such as cooking, washing, and the like, leaving the surplus to flow to the spring of the plaintiff in its natural channel. But the findings show that the defendant has diverted the whole body of the stream through pipes, in such a manner that no portion of the water can reach the spring; and the surplus at the commencement of the action was running to waste, as appears from the admissions in the pleadings. If it were a surface stream, the plaintiff would be entitled to have it flow to and across his lands, in its natural channel, subject only to the right of the defendant to use so much of the water as is necessary to supply his natural or primary wants as above indicated; nor, on the facts found, can the defendant exercise any greater right in respect to a subterranean stream. Assuming, therefore, that the rights of the defendant are precisely the same as though it was a surface stream, he has exceeded them by diverting the whole body of the water from its natural channel, instead of allowing the surplus to flow to the spring in its accustomed bed.

But the exigency of the case does not require us to decide that the defendant has the same right in respect to a subterranean stream as though it was a surface stream flowing across his land; and our decision is only to the effect that, if it be assumed his rights are the same, he has, nevertheless, exceeded them by diverting the whole body of the stream, instead of allowing the surplus to flow to the spring in its natural channel.

There is no question in this case involving the right of a riparian owner to the use of water for purposes of irrigation; nor is the point before us whether or not a land-owner may be restrained from diverting or obstructing the flow of an underground current, running in a defined channel across his land, and which supplies a spring or well on the adjoining lands, if it

become necessary to divert or obstruct the stream in the prosecution of the business of mining, or any other legitimate enterprise on his own land; nor to what extent, if at all, it would affect the question if the underground current was not known to exist until the fact was discovered in the prosecution of the work. These are grave questions, which the exigency of the present case does not require us to decide.

Judgment affirmed.

RHODES, J., concurring:

I concur in the judgment, on the ground that the defendant, in my opinion, has no right to divert the waters of the subterranean stream, if the spring of the plaintiff will thereby be materially injured.

Mr. Chief Justice WALLACE did not express any opinion.