[L. A. No. 1134.   Department One.—December 9, 1903.]

## WILLIAM O. McCLINTOCK, Respondent, v. VICTORIA HUDSON et al., Appellants.

WATER RIGHTS—PERCOLATING WATER—FINDINGS—SUFFICIENCY OF EVIDENCE—EXCAVATION IN PERMEABLE MATERIAL — DIMINUTION OF STREAM.—Though the evidence tends very strongly to show that a tunnel and excavation by the plaintiff in permeable gravelly ma-

terial near the bed of a stream took part of the subterranean flow of the waters of the stream, constituting part of the stream; yet where the findings that the tunnel took only percolating water from plaintiff's land, and that it did not diminish the supply of the water to which the defendants were entitled, were contrary to the evidence, which showed clearly, without conflict, that the stream was substantially diminished thereby to the injury of the defendants, and that the water was taken beyond the lines of the land from which it was taken, the plaintiff had no right to a decree declaring him to be the absolute owner of the water thus taken, or quieting his title thereto.

Id.—Underground Water.—Under the rule established in *Katz* v. *Walkinshaw, ante,* p. 116, with respect to percolating water, it is not lawful for one owning land bordering on a stream to excavate in his land, intercept percolating water therein, and apply it to any use other than its reasonable use upon the land from which it is taken, if he thereby diminishes the stream to the damage of others having rights therein.

Id.—Rights in Percolating Water.—An owner of land adjoining a stream, who, by excavations in his land, takes percolating water therefrom, and to that extent diminishes the stream, has no greater rights to the water thus taken from the stream than he would have if the water were taken directly from the stream.

Id.—Duty of Court—Amount of Diminution.—It was the duty of the court to have found from the evidence that the taking out of the water through plaintiff's excavation and tunnel caused a diminution of the stream, and then to ascertain and state the amount of the diminution.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. D. K. Trask, Judge.

The facts are stated in the opinion of the court.

Charles H. McFarland, for Appellants.

The plaintiff had no right to divert the waters of the stream through his tunnel, on the theory that it was percolating water. (*City of Los Angeles* v. *Pomeroy,* 124 Cal. 597; *Smith* v. *Brooklyn,* 46 N. Y. Supp. 147; *Van Wickley* v. *Brooklyn,* 118 N. Y. 4; *Burroughs* v. *Satterlee,* 67 Iowa, 396;[1] *Hale* v. *McLea,* 53 Cal. 581; *Saddler* v. *Lee,* 66 Ga. 45.[2])

John D. Pope, for Respondent.

Waters filtrating or percolating in the soil belong to the owner of the soil, and he may use them as he chooses. (*Han-*

---

[1] 56 Am. Rep. 350.                    [2] 42 Am. Rep. 62.

*son* v. *McCue,* 42 Cal. 303;[1] *Painter* v. *Pacific L. and W. Co.,*
91 Cal. 74; *Southern Pacific R. R. Co.* v. *Dufour,* 95 Cal.
369; *Gould* v. *Eaton,* 111 Cal. 639;[2] *Sullivan* v. *Northern
Spy Min. Co.,* 11 Utah, 438; Gould on Waters, sec. 280, and
cases cited.) *Katz* v. *Walkinshaw, ante,* p. 116, is not in-
tended to overrule these authorities. Water under the sur-
face of the earth is presumed to be percolating water. (*Han-
sen* v. *McCue,* 42 Cal. 303;[1] *Tampa Waterworks Co.* v. *Cline,*
37 Fla. 586;[3] *Metcalf* v. *Nelson,* 8 S. Dak. 87;[4] Kinney on
Irrigation, sec. 49; Gould on Waters, sec. 281.)

SHAW, J.—Judgment was given in the court below in
favor of the plaintiff. The defendants moved for a new
trial, and their motion having been denied, they now appeal
from the order denying the same.

The complaint alleges that the plaintiff is the owner of a
certain tract of land in Los Angeles County, and of all the
subterranean water flowing therein and percolating through
the soil thereof; that the plaintiff has made an excavation
and constructed a tunnel, whereby a portion of the subter-
ranean waters percolating through the soil is collected; that
the excavation and the tunnel and the waters thereby col-
lected are entirely upon the land described, and are the prop-
erty of the plaintiff, and that the defendants claim some
right or title to the subterranean waters in the land which is
without foundation. Whereupon they ask that their title
to the property be quieted. The land described in the com-
plaint comprises about thirty-five or forty acres.

The defendants answered, denying the allegation that
the plaintiff owns the subterranean waters flowing and perco-
lating in the soil of the land described, and alleging that the
land of the plaintiff, and also a number of tracts of land
owned by the defendants respectively, each border upon and
are riparian to a certain stream of water known as San José
Creek, which is a stream carrying during the dry season
about five hundred miners' inches of water; that the plaintiff
and the defendants, in connection with other riparian owners,
were each entitled to use a portion of this water for the irri-

[1] 10 Am. Rep. 299.
[2] 52 Am. St. Rep. 201.
[4] 59 Am. St. Rep. 746.
[3] 53 Am. St. Rep. 262.

gation of their respective tracts of land; that all the water of the creek was necessary for that use, and that all the parties, including the plaintiff, had for many years diverted all the water of the creek and used the same for irrigation of their respective tracts of land; that the plaintiff, by means of the excavation and tunnel mentioned in the complaint, had collected together within his said tract of land a stream of water amounting to about one hundred miners' inches of water, which was composed of the percolating and subterranean waters flowing through and under the plaintiff's land; that this water so collected had been taken out by the plaintiff and carried to land which does not belong to him, and which is not riparian to the said creek, and which has no right whatever to any of the waters of the creek; that if this water so collected is allowed to be taken out by the plaintiff, the amount of water flowing below in the bed of the creek will be diminished by the amount that is so collected by the tunnel, and that the defendants will thereby be deprived of the right to use that amount of the water flowing in the creek. The same allegations are repeated by way of cross-complaint, and there is a prayer that the plaintiff be enjoined from continuing to gather and divert the water by means of his tunnel.

The court finds that the waters collected and gathered by the tunnel, and flowing out of the same, consist of waters percolating in the soil of the plaintiff's land, and do not constitute any part of the waters of the creek; that there is not, and has not been, at any time any subterranean stream or streams, or any other waters, surface or subterranean, in the land of the plaintiff which contributed in any manner to the flow of the creek; that the defendants owned no part of the waters gathered or collected by the plaintiff by means of the tunnel and excavation, and that the taking of the water by the plaintiff through the tunnel and excavation did not diminish the supply of the water to which the defendants were entitled. The defendants upon the motion for new trial question the sufficiency of the evidence to sustain the findings that the tunnel does not take water from the San José Creek, that it does not take subterranean water which contributes to the flow of the creek, and that no part of the

waters taken by the tunnel is owned by the defendants, or either of them.

The answer was filed a few days after the decision of this court in *Los Angeles* v. *Pomeroy,* 124 Cal. 597, and the trial took place a few months thereafter. It is quite evident from the proceedings in the course of the trial that the theory of the defendants at that time was that San José Creek was a stream consisting of water flowing upon the surface, resting upon and supported by a body of water permeating the ground under the same, and constituting a part of the stream, similar to that considered in *Los Angeles* v. *Pomeroy,* 124 Cal. 597. The court and counsel on both sides seem to have treated the case as presenting the question whether or not the percolating waters obtained by means of the tunnel in plaintiff's land was part of an underground flow which formed a part of the stream known as San José Creek.

The evidence tends very strongly to show that it did constitute a part of that watercourse. The topography of the country and the situation of San José Creek, with the character of its bed, are alone almost sufficient to prove this fact. San José Creek at that point, when there is any water flowing in it at all, runs in a shallow channel, situated in the bottom of a gulch, or ravine, about one hundred feet wide, with banks something over twenty feet in height. This gulch, or ravine, has, in close proximity on each side, a range of hills. Above, in the same valley, the ranges of hills separate and form a considerably wider valley, so that the entire watershed contributing to the flow of the creek comprises, according to the testimony, some seventy square miles, the water from all of which, if ordinary conditions prevailed, would be forced to flow down the narrow part of the valley in which the plaintiff's land is situated. The bed of the creek is composed of gravelly material, easily permeated by water. The excavation commences in the bed of the stream, and about at the level thereof, and for a distance of about four hundred feet it runs almost parallel with the stream at a distance of not more than fifty feet away, and at an elevation, at the upper end of the four hundred feet, about two feet below the bottom of the stream bed. The tunnel extends from the upper extremity of this excavation, deflecting somewhat from

the course of the stream, and runs under the ground four hundred and eighty feet, to a point about three hundred feet from the bed of the stream, and some four feet below the bottom of the bed. The bottom of the tunnel and excavation throughout its course consists of the same gravelly material as the bed of the stream. The evidence shows that, in the fall of 1898, when the tunnel was begun, there was a small surface stream of water flowing in the bed of the creek; that when it was completed early in the following spring, and even before its completion, the stream had ceased to flow, a thing which had never before occurred at that season; and that from that time until the trial, in the fall of 1899, there had been no water flowing in the creek at that point. From these facts the conclusion is almost irresistible that the excavation and the tunnel had either intercepted some of the water that would eventually have reached the stream, or had withdrawn some of the water from the stream by percolation through the gravelly material. The streams of this state in their course through the lower levels, after they have left the precipitous sides of the mountains on which they originate, do not ordinarily flow over beds of rock or other material impervious to water. The usual condition is, that such streams flow in a shallow channel, over and through a mass of sand and gravel saturated with water from bed-rock up to or slightly above the level of the surface of the stream. Streams of this character were the subject of the litigation, and the rules to ascertain what is necessary to make the underground water constitute a part of a stream were considered, in the cases of *Hale* v. *McLea,* 53 Cal. 578; *Los Angeles* v. *Pomeroy,* 124 Cal. 597; *Vineland Dist.* v. *Azusa Dist.,* 126 Cal. 486; and *Yarwood* v. *West L. A. W. Co.,* 132 Cal. 204. In almost every case of a stream of this character, if excavations are allowed to be made in the permeable material underlying and adjoining the bed of the stream, the result inevitably is, that the water collected in such excavations either comes from the stream by percolation from above, or is intercepted on its way to the stream below, with the consequence that in either event the stream is diminished by the amount of water which is gathered in the excavation.

It is not necessary, however, in this case to determine

whether or not the court was wrong in refusing to characterize the flow of underground water, which the plaintiff took by means of his tunnel, as a part of the stream and necessary to its support and maintenance. The case of *Katz* v. *Walkinshaw, ante,* p. 116, decided November 28, 1903, establishes a rule with respect to waters percolating in the soil, which makes it to a large extent immaterial whether the waters in this land were or were not a part of an underground stream, provided the fact be established that their extraction from the ground diminished to that extent, or to some substantial extent, the waters flowing in the stream. By the principles laid down in that case it is not lawful for one owning land bordering upon or adjacent to a stream, to make an excavation in his land in order to intercept and obtain the percolating water, and apply such water to any use other than its reasonable use upon the land from which it is taken, if he thereby diminishes the stream and causes damage to parties having rights in the water there flowing. If, therefore, it appears in this case that the finding of the court that the water taken by the plaintiff did not diminish the waters in the stream is not supported by the evidence, but that, on the contrary, the evidence shows that the stream was substantially diminished thereby, to the injury of the defendants, as the finding is necessary to support the judgment, the case must be reversed and a new trial had, even if the water when taken did not constitute strictly a part of the stream.

The court below manifestly did not consider that this question was of any consequence, and, having concluded that the water was not a part of the stream, it conceived the idea that it was not water to which the defendants were entitled in law, and that, consequently, its abstraction did not take any of the flow of the stream to which the defendants were entitled. And this would have been correct if the principle had not been established in *Katz* v. *Walkinshaw, ante,* p. 116, as stated. It is quite clear from the evidence that the court erred in finding that the stream was not diminished by the abstraction of the water by the plaintiff by means of the excavation and tunnel. Three hydraulic engineers testified on behalf of defendants, and each, after describing the condition and character of the material composing the bed of the creek

and the bottom of the tunnel, stated that, in his opinion, necessarily, whatever water was taken from the excavation and tunnel diminished by that much the amount flowing in the stream below. There was no evidence to the contrary. One engineer was examined on behalf of the plaintiff in rebuttal, but he was not asked whether or not, in his opinion, the percolating waters gathered by the tunnel would eventually reach the stream, nor whether or not the waters in the tunnel came from the stream through the permeable material. There is no conflict in the direct evidence on this question, and the circumstances, generally, tend to confirm the opinion of the engineers. The court should have found from the evidence that there was a diminution of the stream caused by the taking out of the water through the excavation and tunnel. Having found this fact, it would then be the duty of the court to ascertain and state the amount of the diminution. The plaintiff has no right to a decree declaring him to be the absolute owner of water thus taken from the creek, or quieting his title thereto. His rights therein are no greater than they would be if he had taken the water directly from the stream.

There is no finding upon the allegation that the plaintiff was taking this water to distant and non-riparian lands. The court below probably deemed this immaterial, after having found that the water taken was no part of the waters of the creek, and did not reduce the quantity there flowing. The evidence shows clearly that the water in question was taken beyond the boundaries of the land described in the complaint, but it does not show to what use it was put by the plaintiff. He had no right, however, to take it beyond the lines of the land from which it was taken and divert it from the stream, either to let it go to waste or to use it on other lands. The motion for a new trial should have been granted.

The order appealed from is reversed and the cause remanded for a new trial.

Van Dyke, J., and Angellotti, J., concurred.

Hearing in Bank denied.