[Sac. No. 2450. In Bank.—October 3, 1918.]

## L. A. SMITH et al., Respondents, v. E. C. GAYLORD et al., Appellants.

WATER RIGHTS — DIVERSION BY NONRIPARIAN OWNER — TITLE BY PRE-SCRIPTION.—Where the owners of lands distant from a stream, and in no sense riparian as to its waters, go upon the lands of another through which a stream is flowing, and, by means of dams and ditches, divert a certain amount of such waters and convey them to their own lands, and such diversion is continued for a period much longer than that prescribed by the statute for gaining title by pre-scription, under an asserted right so to do, they thereby acquire a prescriptive right to both the waters and the ditch.

APPEAL from a judgment of the Superior Court of Placer County, and from an order denying a new trial. J. E. Prewett, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ben P. Tabor, and John M. Fulweiler, for Appellants.

Tuttle & Tuttle, for Respondents.

SLOSS, J.—This cause was originally heard in Depart-ment One, where the judgment and order appealed from were affirmed, upon grounds stated in an opinion prepared by Richards, J., *pro tem.* A hearing in Bank was ordered to enable the court to give further consideration to the question of the relative rights of the opposing parties to a flow of water artificially added by defendants to the natural volume of the stream. It was thought that the opinion might, on this point,

be in conflict with *E. Clemens Horst Co.* v. *New Blue Point Min. Co.,* 177 Cal. 631, [171 Pac. 417], which had been decided by the court in Bank shortly after the filing of the Department opinion herein.   On further study of the record we are satisfied that the facts of the present case do not present the legal questions determined in the Horst case.   With the exception of a paragraph dealing with this branch of the case, we adopt, virtually *verbatim,* the following statement and discussion from the opinion of Mr. Justice Richards.

This is an appeal from a judgment in favor of plaintiffs and from an order denying the defendants', other than Gaylord's, motion for a new trial.   The nature of the action is that of a suit by plaintiffs to quiet their title to a ditch and water right in the county of Placer.   The defendant, Haskell Gold Mining Company, has been for many years the owner of certain real property in said county known as the Greenwood Place.   During the same period the plaintiffs were the owners of another near-by tract known as the Oleander Ranch. Through the said defendant's property passes a ravine known as "Dirty Face Ravine," down which originally flowed a certain limited amount of water.   This ravine does not border upon or traverse the plaintiff's lands, nor did its waters originally flow to or across the same.   In about the year 1891 a tunnel had been run into the side of "Dirty Face Ravine" upon the defendant's property and a flow of water struck, which increased to some extent the amount of water which had theretofore flowed down the ravine.   There had been an old miner's ditch having its head in the ravine at some little distance below the site of said tunnel and which conveyed the original flow of the waters of the ravine over toward the Oleander Ranch.   This ditch had been unused for years, but in about the year 1894, after the accretion in the original waters of the ravine, through the addition of those developed in said tunnel, the plaintiffs went upon the defendant's property, cleaned out the old ditch, repaired the dam at its head, and began diverting a considerable portion of the waters then flowing in the ravine, and conveying the same by means of said reconstructed ditch to their own lands, where they used said waters during certain months of the year for purposes of irrigation.   There is evidence tending to show that this diversion and use of these waters continued thereafter up to a time shortly before the commencement of this action.   Upon

the trial of the cause the court found that the plaintiffs were the owners of the ditch, extending from its head in "Dirty Face Ravine" to the Oleander Ranch, together with the right to take, divert, and use, by means of said ditch, two miner's inches of the waters of said ravine during the months of July, August, and September of each year, and three miner's inches thereof during the months of May, June, and October of each year. The court further found that for more than fifteen years next preceding the commencement of the action the plaintiffs had been in actual, exclusive, open, and notorious possession of said waters and said ditch, and during all of said time said plaintiffs had actually, exclusively, openly, and notoriously used said water and said ditch; that the said possession and user by plaintiffs during all the said times had been hostile to said defendant's title and rights, and said defendants during all such times had full knowledge of said possession and user; that said user and said possession of plaintiffs during all of said times had been under a claim of title exclusive of any right in said defendants, and that said user and possession of plaintiffs during all of said times had been continuous and uninterrupted. It was chiefly these findings and the judgment based thereon which were the subject of defendants' assault upon motion for a new trial, and of the appellants' attack upon this appeal.

It is to be noted at the outset that this is not the case of a lower riparian owner diverting or using the waters of a stream at a point below the lands of the upper riparian owner for the statutory period required for the acquisition of easements by prescription. The lands of the plaintiffs herein are not riparian as to the waters in question, nor is the point of their diversion of such waters below the lands of the defendant which are riparian to such waters, but is upon the lands of the defendants at a point which would constitute an interference with their riparian rights therein. The cases cited by appellants which deny to a lower riparian proprietor the power of acquiring prescriptive rights to the use of the waters of a stream by the mere user thereof for any period after they have passed the lands of the upper proprietor, have no application to the facts of the case at bar. This is a case where the owners of lands distant from the stream, and in no sense riparian, as to its waters, go upon the lands of another through which a stream is flowing, and, by means of dams and

ditches, divert a certain amount of such waters and convey them to their own lands. Having done this for a period much longer than that prescribed by the statute for gaining title by prescription, the plaintiffs now assert a prescriptive right to continue so to do, to the extent of their prior diversion, as shown by the evidence in the case. That a prescriptive right, both to the ditch and to the waters flowing therein, may be thus acquired does not seem to be seriously disputed by the appellants herein, and their contention is, therefore, reduced to the question as to whether the evidence in the case was sufficient to justify the findings of the court above set forth.

Turning to the evidence in the case, the record discloses practically without contradiction that in about the year 1894 the plaintiffs entered upon the lands of the defendant, Haskell Gold Mining Company, and there cleaned out and reopened the old and unused miner's ditch, and rebuilt the dam at its head, and then began to divert the waters at that time flowing in "Dirty Face Ravine," and conveyed the same by an extension of said ditch to their own lands. This entry was, so far as the record discloses, in the nature of a trespass. The opening of the ditch and establishment of the dam was an interference with the said defendant's rights upon its own land, and the diversion of the water then taken and continued to be thereafter taken, constituted an invasion of the defendant's ownership thereof, and of its rights as a riparian proprietor therein. All of these acts and invasions were from their beginning known to the officers and agents of the defendant Haskell Gold Mining Company, according to their own admissions on the witness-stand. They were, therefore, from their inception, an open and adverse user of the defendant's lands, and an interference with its rights as to these waters. There is some evidence that such user was attended with a claim of right on the plaintiff's part, and there is also evidence, which is practically uncontradicted, that the maintenance of the dam and ditch and the diversion of the amount of these waters accomplished thereby was never objected to or interfered with by or on behalf of the said defendants until a short time prior to the institution of this action. There is some evidence tending to show that occasionally during the course of the fifteen years of the plaintiffs' user of these waters, the said defendant, through its agents and lessees, during the course of mining operations upon its property,

used without objection on plaintiffs' part, some, and at times all, of the waters collected and flowing in "Dirty Face Ravine," and it is argued by appellants that this user of said waters by said defendant was sufficient to prevent the plaintiffs' use thereof from being exclusive, and that, therefore, the plaintiffs' use of such waters could not ripen into a prescriptive right. On the other hand, however, there is evidence tending to show that such mining operations and occasional use of said waters by the defendant were carried on during the winter months when the plaintiffs were neither using nor claiming the right to the use of said waters, and there is also some evidence that even during the occasions of such use thereof by the defendant in connection with its mining operations, the waters after such use were returned to the ravine and flowed on down it, so that the amount of water at the plaintiffs' point of diversion was never apparently reduced. In this connection it is to be noted that the trial court in its findings and judgment only awarded to the plaintiffs the right to use "two miner's inches of water during the months of July, August, and September, and three miner's inches of such waters during May, June, and October of each year." There is some conflict of evidence regarding some of the matters above recited, but we think that, taking the testimony as a whole, there was sufficient evidence before the court to justify its findings to the effect that the plaintiffs had established a prescriptive right to the use of so much of the waters in question as were awarded to them by the court.

The appellants contend, however, that the trial court awarded the plaintiffs a flow of water developed by the tunnel to which reference has been made; that the waters thus developed would not under natural conditions have flowed down the ravine or come to the head of plaintiffs' ditch, and that plaintiffs could not, as against those developing such waters and adding them to the natural flow, acquire any prescriptive right. (See *E. Clemens Horst Co.* v. *New Blue Point Min. Co.*, 177 Cal. 631, [171 Pac. 417].) The findings, however, are against the allegations of the answer which form the basis of this claim. There is a substantial conflict in the evidence on the point, and the finding is, therefore, binding here. The respondents introduced testimony to the effect that the running of the tunnel intercepted springs and sources from which water had theretofore come to the surface of the ravine

naturally, and that the stream had, prior to the running of the tunnel, carried an amount of water at least equal to that awarded the plaintiffs by the decree. To the extent of the right adjudged to belong to the plaintiffs the waters were, therefore, properly treated as a part of the natural flow of the stream. (*McClintock* v. *Hudson*, 141 Cal. 275, [74 Pac. 849].)

It is urged that plaintiffs failed to make out a case of title by prescription for want of proof that they had, for the required period, paid all taxes levied and assessed upon the water right claimed by them. The point is not available on this appeal. The court found that plaintiffs were the owners of the right, and the statement on motion for new trial contains no such specification of insufficiency of evidence as would direct attention to the defect which is now, apparently for the first time, asserted.

The foregoing discussion covers the several points upon this appeal to which the appellants have presented argument or cited authority in support of their contentions. As to the several other grounds of error which are merely stated without argument or citation of authority, they have no such apparent merit as to justify their consideration or as to warrant a reversal of this case upon appeal.

Judgment and order affirmed.

Richards, J., *pro tem.*, Shaw, J., Melvin, J., Wilbur, J., and Lorigan, J., concurred.