**MIDWAY IRRIGATION CO. et al. v. SNAKE CREEK MINING & TUNNEL CO.*** 

(Circuit Court of Appeals, Eighth Circuit. January 28, 1921.)

No. 5570.

1. **Waters and water courses ☜152(6)—Burden on claimant of subterranean water to prove not from percolation.**

In a suit to determine the right to water drawn from inside a mountain by means of a tunnel and flowing into a stream, as between the owner of the tunnel and a prior appropriator of the water of the stream, the former has the burden of proof to show that such water is not seepage or percolating water from the surface, which but for the tunnel would otherwise have been tributary to the stream.

2. **Waters and water courses ☜152(8)—Evidence showed that water was gathered by tunnel through percolation from surface.**

Evidence *held* insufficient to sustain the claim of complainant that water, gathered by its tunnel driven several thousand feet into a mountain and flowing into a creek near the entrance, came from subterranean sources, but to show that the water reached the tunnel through percolation from the surface, and before making of the tunnel found its way into the creek by seepage and through springs; it appearing that since the tunnel was constructed the flow of water in the creek above its entrance has materially decreased.

3. **Waters and water courses ☜127—English rule governing water rights not applicable in arid states.**

The English or common-law rule respecting water rights is not applicable to the Western mountain states, unless adopted by the highest court of the state.

4. **Waters and water courses ☜143—Subterranean waters cannot be appropriated in excess of reasonable beneficial use.**

By the American rule, adopted by most of the Western states, while the owner of land is entitled to appropriate subterranean or other waters accumulating on his land, which thereby become a part of the realty, he cannot extract and appropriate them in excess of a reasonable and beneficial use upon the land he owns, especially if the exercise of such use, in excess of the reasonable and beneficial use, is injurious to others, who have substantial rights to the water.

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari granted 254 U. S. ——, 41 Sup. Ct. 536, 65 L. Ed. ——.

**5. Courts ⬅368—Federal courts follow later rather than earlier decisions of state courts.**

 If there be any inconsistency in the opinions of the court of last resort of a state, in determining a rule of law which the national courts are bound to follow, the general rule is that the latest settled adjudication will be followed in preference to the earlier ones.

**6. Waters and water courses ⬅140—Appropriators of waters of creek entitled to water diverted by mining tunnel.**

 Complainant constructed a tunnel into a mountain for mining purposes, into which surface water previously tributary to a creek percolated and was discharged at the tunnel entrance into the creek. Complainant did not make use of such water in its business, but undertook to sell the same from the creek, the waters of which had many years before been lawfully appropriated by defendant and applied to beneficial use in the irrigation of its lands, which were otherwise arid and valueless. *Held*, that the tunnel was a part of the natural flow of the creek and subject to defendants' prior appropriation.

Appeal from the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Suit in equity by the Snake Creek Mining & Tunnel Company against the Midway Irrigation Company and others. Decree for complainant, and defendants appeal. Reversed.

The parties will be referred to herein as they appeared in the court below, the appellants as defendants, and the appellee as the plaintiff. The plaintiff by its complaint sought to have its claim to the water flowing from its tunnel, between the portal of the tunnel and the point of diversion, less loss by seepage and evaporation, established and confirmed against the defendants; that it be decreed that the defendants have no right to take and divert from Snake creek below the point where the water, issuing from its tunnel, flows into Snake creek, and the defendants be enjoined from claiming said water or any part thereof.

The material allegations in the complaint are that the plaintiff is the owner of a quarter section of land, and in April, 1910, it commenced to drive a tunnel, the portal of which is on said land, and constructed it 14,500 feet into the mountain at great depth, and is the owner thereof and the water issuing therefrom; that about 2,684 feet from the portal of the tunnel water was encountered percolating through the rocks and soil, which is conveyed through and from the tunnel in a sluice at the bottom of the tunnel, the amount of water flowing from the tunnel in 1918 being 14.38 second feet or 6,454 gallons per minute; that from the portal of the tunnel the water flows about 2,000 feet into Snake creek, which is a tributary of Provo river, both of which are natural water courses; that water was first encountered in the tunnel in January, 1911, and has been increasing ever since, as the tunnel was lengthened; that, in permitting the water from the tunnel to flow into Snake creek, it did not intend to abandon its title to the water, and to become a part of Snake creek or Provo river, subject to appropriation by others, but claimed to own it, with the right to divert it for irrigation or other beneficial purposes; that before the beginning of the irrigation season in 1914 it sold the right to take this water to the Provo Reservoir Company for the purpose of irrigation, which requires it for the growing of crops by its stockholders; that all other waters flowing into Snake creek, Spring creek, and Provo river had been theretofore appropriated for irrigation and other useful purposes; that the defendant Irrigation Company is a corporation for the purpose of irrigation, and denies that plaintiff is the owner of the water flowing from said tunnel, and claims that it was water subject to appropriation and use by it for its stockholders, and diverts for purposes of irrigation all the water flowing from plaintiff's tunnel into the creek; that it has diverted the water below where it flows from the tunnel into the

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

creek, and deprived the Provo Reservoir Company and its stockholders of the use of said water, which prevents them from raising crops.

The defendants filed an answer and counterclaim. In it they deny that the water is percolating water, in the sense that it is a part of the soil lying therein, but allege that said waters before they enter said tunnel are flowing waters, directly tributary to and part of a natural stream known as Snake creek, varying at times in proportion as the waters in Snake creek vary at different times. They deny that Snake creek and Provo river are public water courses, but allege that long before the plaintiff commenced the driving of the tunnel all the waters of Snake creek, Spring creek, and Provo river had become vested in private ownership of defendant and its stockholders. They deny that any of the surplus waters in said tunnel were subject to appropriation by the plaintiff, or any other person, except the defendants. They claim that the waters from said tunnel have for more than 25 years been appropriated and used by the defendants, who are now the owners thereof, and have the right to use the same for beneficial and useful purposes; no water having been added to the creek or river since the driving of the tunnel. They deny that plaintiff or its predecessors, within 25 years before the institution of their action, ever claimed or asserted that the waters from said tunnel were public waters or subject to appropriation.

In their counterclaim the defendants allege that for more than 25 years they and their predecessors in interest have been the owners of all the waters and water rights for irrigation and other beneficial purposes of the waters and water rights for irrigation of Snake creek, by appropriation and diversion: that the natural sources of said creek consist of rain, melting snow, springs, and seepages, which, before the construction of the tunnel, ordinarily supplied the greater portion of the flowing water of said creek and were the main reliance of the defendants for the supply of water for the irrigation of their land and other beneficial purposes; that said springs and seepages had their source in the bosom of the mountains, and before the construction of the tunnel found their way to the surface of the mountains through natural channels and fissures of the rocks, and found their way into said creek, and were its natural tributaries and feeders; that all the waters of said creek and water rights pertaining thereto are owned by defendants, and are necessary and not more than sufficient, when economically used, for their purposes as stated; that the plaintiff wrongfully and in violation of defendants' rights drove its tunnel, from the mouth of which a substantial quantity of water flows, sufficient to irrigate several hundred acres of land, which waters formerly found their way into the natural surface channel of Snake creek through underground channels and sources; that the tunnel is in the immediate vicinity of Snake creek, its portal being in the canyon through which the creek flows, and in the prosecution of the work undermined, cut off, and diverted the underground flowing streams, springs, and seepage constituting the permanent source of the flowing water of said creek, and thereby caused said waters to flow into the tunnel; that prior to the digging of plaintiff's tunnel the Mountain Lake Mining Company dug a deep tunnel into the mountain at a point higher up the stream and higher in elevation than plaintiff's tunnel, which tunnel of the Mountain Lake Mining Company crosses Snake creek underneath its head; that the driving of the Mountain Lake tunnel dried up some of the springs, which theretofore had come to the surface, and which constituted the headwaters of Snake creek, and ever since the waters which formerly came to the surface through said springs thereafter flowed out of the mouth of said Mountain Lake tunnel; that since the driving of plaintiff's tunnel the volume of water flowing out of the Mountain Lake tunnel has receded one-third, all of which waters formerly found their way into Snake creek and supplied the natural volume of flow thereof; that by constructing its tunnel plaintiff has interfered with the natural supply of the flowing waters of Snake creek; that before the digging of the tunnel the natural subsurface water supply of said creek found its way through natural channels into the stream, uniform in volume relatively during the low-water season; that since then, and by reason thereof, the store waters from within the mountain drained off more rapidly, and by

reason thereof defendants are deprived of water, which otherwise they would have had, and so deprived during the irrigation season each year, when it is necessary for the maturing of their crops; that if plaintiff is permitted to extend said tunnel further it will still more lessen the water supply, and make the farms and homes of defendant's stockholders valueless.

The prayer of the counterclaim is for an injunction, enjoining plaintiff from asserting any claim to the waters flowing from said tunnel and quieting defendants' title to the water flowing from the tunnel and interfering with defendants' free and unrestricted use thereof, and also enjoining it from extending its tunnel further in the mountain. The reply of the plaintiff to the counterclaim is in effect a general denial of the material allegations alleged.

A. B. Irvine, of Salt Lake City, Utah (Sam D. Thurman, of Salt Lake City, Utah, on the brief), for appellants.

H. R. Macmillan, of Salt Lake City, Utah (Andrew Howat, John A. Marshall, and B. S. Crow, all of Salt Lake City, Utah, on the brief), for appellee.

Before SANBORN and STONE, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge (after stating the facts as above). It is admitted by the plaintiff in its brief that the evidence establishes that—

"The defendants' predecessors in interest had, more than 25 years before the driving of the tunnel, appropriated all of the water flowing in Snake creek and at some considerable distance below the portal of the tunnel, and diverted the water on to their lands for the purpose of irrigation. These lands are arid, and do not bear any crops unless irrigated, and without water were of little or no value."

[1] The learned District Judge reached his conclusion that the owners of the tunnel were entitled to the water which flowed from it, not on the ground that the preponderance of the evidence sustained the plaintiff's claim, but on the ground that, notwithstanding the prior appropriation of all the waters of the creek by the Irrigation Company and the fact that the portal of the tunnel was located near the bank of Snake creek and up towards its sources, the burden of proof was on the prior appropriators to show that the waters in the tunnel were derived from subterranean waters which flowed into the creek, if they had not seeped into and been collected with and drawn from the ground by the Tunnel Company by the use of its tunnel. The Supreme Court of Utah has expressly held:

"The burden of proof is upon the one who has discovered certain subterranean water and claiming the same to show that such water is, in fact, 'developed water.' Therefore, whoever asserts that he is entitled to the exclusive use of water by reason of his having discovered and 'developed' the same must assure the court, by a preponderance of the evidence, that he is not intercepting the tributaries of the main stream or other body to the waters of which others are entitled." Mountain Lake Mining Co. v. Midway Irrigation Co., 47 Utah, 346, 360, 149 Pac. 929, 934.

This was reaffirmed in Bastian v. Nebeker, 49 Utah, 390, 163 Pac. 1092. The courts of last resort in other mountain states, where conditions are similar to those prevailing in the state of Utah, have reached

the same conclusion. Platte Valley Irrigation Co. v. Buckers I. M. & I. Co., 25 Colo. 77, 53 Pac. 334; Smith v. Duff, 39 Mont. 382, 102 Pac. 984, 133 Am. St. Rep. 587.

This rule seems more rational and logical than the opposite rule, to wit: That the burden is upon the prior appropriators to show that subterranean waters drawn by another by means of a tunnel from the ground that might have constituted the sources of the stream, were in fact the source thereof. Those who run tunnels into the mountain and gather water in this way, near the sources of streams, have better means of knowledge whether they are gathering water tributary to the streams than do prior appropriators down the streams, who are cultivating their lands and have nothing to do with the driving of such tunnels, and it would be an irrational and burdensome rule, probably destructive of their rights, to require such prior appropriators to establish the fact in the first instance, that the owners of the tunnel intercepted the tributaries to the stream.

[2] Adopting this rule, the evidence warrants findings, and we so find, that since the construction of the tunnel, by the plaintiff, the water in Snake creek has been materially lessened to an extent that there is not sufficient water in the creek to enable the stockholders of the defendant company to irrigate their lands, so as to be able to cultivate their lands, which are all agricultural, unless permitted to use the surplus water flowing into the creek from plaintiff's tunnel; that the water flowing into the creek from that tunnel is not used nor necessary to enable the plaintiff to operate its mine and other works connected with its mining operations, and which under its charter it is authorized to carry on; that the water in controversy is sold by it to another irrigation district, formed years after the defendants had appropriated the water in Snake creek; that the waters of the tunnel are percolating waters and from seepage, and which before the construction of the tunnel found their way through the soil and rocks to springs flowing into Snake creek, and had been appropriated and were used by the defendants for irrigating their lands, and that without them their lands cannot be cultivated; that these waters with the water obtained by them from Snake creek and the Ontario tunnel, enabled them to raise crops practically every year, but that the plaintiff's tunnel intercepted considerable of this water, thereby diminishing the water in the creek, and unless permitted to use the water flowing from the tunnel into the creek their lands cannot be cultivated. The evidence fails to establish that the water which passes into the tunnel comes from underground channels. The real issue involved is whether these waters belong to the owner of the soil in which they are found—in this instance the plaintiff—regardless of where they come from. To determine this question, the national courts will follow the rule adopted by the state of the situs, as determined by its court of last resort, if that court has established such a rule. If it has not been so determined, and in the absence of a controlling statute of the state, it is for the national courts, if called on, to determine what the law is. That the statute of the state (section 2780, Comp. Laws Utah 1888), cited by counsel for defendants, does not

271 F.—11

apply, has been decided in Crescent Min. Co. v. Silver King Min. Co., 17 Utah, 444, 54 Pac. 244, 70 Am. St. Rep. 810.

[3] The rule which may have prevailed at common law is only material if it has been adopted by the Supreme Court of Utah. As was well said in Starr v. Child, 20 Wend. (N. Y.) 159, approved in People ex rel. v. Canal Appraisers, 33 N. Y. 461, and in Katz v. Walkinshaw, 141 Cal. 116, 74 Pac. 766, 64 L. R. A. 236, 99 Am. St. Rep. 35:

> "I think no doctrine better settled than that such portions of the law of England as are not adapted to our condition form no part of the law of this state. This exception includes not only such laws as are inconsistent with the spirit of our institutions, but such as were framed with special reference to the physical condition of a country differing widely from our own. It is contrary to the spirit of the common law itself, to apply a rule founded on a particular reason, to a case, when that reason utterly fails."

This principle of law was in effect applied in The Genesee Chief, 53 U. S. (12 How.) 443, 13 L. Ed. 1058, when The Thomas Jefferson, 23 U. S. (10 Wheat.) 428, 6 L. Ed. 358, and The Steamboat Orleans, 36 U. S. (11 Pet.) 175, 9 L. Ed. 677, were in an opinion delivered by Chief Justice Taney overruled. In Jennings v. Kirk, 98 U. S. 453, 458, 25 L. Ed. 240, the rules governing water rights, established by miners, which disregarded the common law respecting the rights of riparian owners, were upheld. In Atchison v. Peterson, 87 U. S. (20 Wall.) 507, 22 L. Ed. 414, quoting from the syllabus, it was held that—

> "On the mineral lands of the public domain in the Pacific states and territories, the doctrines of the common law, declaratory of the rights of riparian proprietors respecting the use of running waters, are inapplicable, or applicable only in a very limited extent to the necessities of miners, and inadequate to their protection; their prior appropriation gives the better right to running waters to the extent, in quantity and quality, necessary for the uses to which the water is applied."

The conditions in the Western mountain states, where the lands are practically arid, and therefore agricultural products can only be raised by the aid of irrigation, differ materially from those prevailing in England and therefore, unless the Supreme Court of Utah has adopted the so-called English rule, we do not deem it a proper rule to be applied in that state. It has been so held by the courts of the states where similar conditions prevail as in the state of Utah. Katz v. Walkinshaw, 141 Cal. 116, 70 Pac. 663, 74 Pac. 766, 64 L. R. A. 236, 99 Am. St. Rep. 35; McClintock v. Hudson, 141 Cal. 275, 74 Pac. 849; Los Angeles v. Hunter, 156 Cal. 603, 105 Pac. 755; Comstock v. Ramsay, 55 Colo. 244, 133 Pac. 1107; Wiel on Water Rights (3d Ed.) §§ 1063 and 1066; 2 Kinney on Water Rights, §§ 1193, 1194.

[4] The rule generally adopted by, not only the courts of the arid states, but by most of the American courts, so that it may be said to be the American, as distinguished from the English rule, is that, while the owner of the land is entitled to appropriate subterranean or other waters accumulating on his land, which thereby become a part of the realty, he cannot extract and appropriate them in excess of a reasonable and beneficial use upon the land he owns, unconnected with the beneficial use of the land, especially if the exercise of such use in excess of

the reasonable and beneficial use is injurious to others, who have substantial rights to the water. Meeker v. City of East Orange, 77 N. J. Law, 623, 74 Atl. 379, 25 L. R. A. (N. S.) 465, 134 Am. St. Rep. 798; Smith v. Brooklyn, 18 App. Div. 340, 46 N. Y. Supp. 141, affirmed 160 N. Y. 359, 54 N. E. 787, 45 L. R. A. 664; Forbell v. New York, 164 N. Y. 522, 58 N. E. 644, 51 L. R. A. 695, 79 Am. St. Rep. 666; Bassett v. Salisbury, 43 N. H. 569, 82 Am. Dec. 179; Willis v. Perry, 92 Iowa, 297, 60 N. W. 727, 26 L. R. A. 124; Stillwater Water Co. v. Farmer, 89 Minn. 58, 93 N. W. 907, 60 L. R. A. 875, 99 Am. St. Rep. 541.

The rulings of the Supreme Court of Utah are not harmonious. The earliest decisions seem to have favored the English rule, although they were not always harmonious. But in its latest decisions that court has adopted the American rule, although not so stated in express terms, and in effect overruling Roberts v. Gribble, 43 Utah, 411, 134 Pac. 1014, a case much relied on by counsel for plaintiff.

[5] If there be any inconsistency in the opinions of the court of last resort of a state in determining a rule of law, which the national courts are bound to follow, the general rule is that they will follow the latest settled adjudication in preference to the earlier ones. United States v. Morrison, 29 U. S. (4 Pet.) 126, 7 L. Ed. 804; Green v. Neal's Lessee, 31 U. S. (6 Pet.) 291, 8 L. Ed. 402; Wade v. Travis County, 174 U. S. 499, 508, 19 Sup. Ct. 715, 43 L. Ed. 1060; Leffingwell v. Warren, 67 U. S. (2 Black) 599, 17 L. Ed. 261; Quinette v. Pullman Co., 229 Fed. 333, 143 C. C. A. 453; Kibbe v. Ditto, 93 U. S. 674, 23 L. Ed. 1005; Bauserman v. Blunt, 147 U. S. 647, 13 Sup. Ct. 466, 37 L. Ed. 316. The exception to this rule is, where, upon the faith of state decisions, contracts or investments have been made on the faith of these decisions, and which at the time had not been overruled. But in the instant case plaintiff constructed its tunnel for mining only and not to obtain water to sell for irrigation purposes. It therefore cannot be said that it made its investment for the purpose of using the surplus waters for the purpose of sale. For this reason the authorities cited by counsel, based upon the rule of law applied in Gelpcke v. Dubuque, 68 U. S. (1 Wall.) 175, 17 L. Ed. 520; Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359, and other cases cited, which are to the same effect, is inapplicable, and does not sustain the contention that this court must follow the rulings of the Supreme Court of Utah made prior to and not overruled at the time the plaintiff constructed its tunnel.

[6] It will serve no useful purpose to review the older opinions of that court, as they have been considered by the Supreme Court of Utah in its latest decisions, which we deem it our duty to follow. In Stookey v. Green, 53 Utah, 311, 178 Pac. 586, opinion filed January 27, 1919, that court, referring to Garns v. Rollins, 41 Utah, 260, 125 Pac. 867, Ann. Cas. 1915C, 1159, and Roberts v. Gribble, supra, said:

"In Garns v. Rollins * * * it was held that the run-off, waste and seepage from irrigation are not subject to appropriation as against the owner of the land irrigated who desires to recapture it and apply it on his own land. In Roberts v. Gribble * * * the water in dispute resulted mainly from the irrigation of lands in the vicinity. Defendant's land

became swampy. He put in a drain system, collected the water, and used it upon his own land. In doing so he deprived plaintiff of its use."

The court then said:

"The principle underlying these two cases seems to be that waste and seepage waters from artificial irrigation constitute an artificial, rather than a natural, source of supply, and therefore are not the subject of appropriation. This principle is undoubtedly correct as applied to the facts in the Garns Case, and the Roberts–Gribble Case relies on the Garns Case as authority. If it goes no farther, we are of the opinion its rests upon a firm foundation."

In Rasmussen v. Moroni Irrigation Co. (Utah) 189 Pac. 572, the previous decisions of the court were relied on by appellant. The court, referring to Stookey v. Green, supra, said:

"All of the foregoing decisions, except the two in which the Herriman Irrigation Company was a party, are considered and reviewed in the recent case of Stookey v. Green. * * * The legal effect of those decisions and the principles upon which they rest are so clearly and ably stated by Mr. Justice Thurman that it would be a work of supererogation on the part of the writer to attempt to further review and statement."

The court, in referring to Roberts v. Gribble, says:

"The only case in which it might be said that the facts and conditions somewhat resemble those of the case at bar is the case of Roberts v. Gribble, supra. The decision in that case is, however, squarely based upon the case of Garns v. Rollins, and the facts in the latter case necessarily take the Roberts decision entirely outside of the principles which must control the case at bar. If, however, the case of Roberts v. Gribble shall be construed so as to make it applicable to the undisputed facts of the case at bar, then the decision in that case must be distinguished, and, if necessary, modified, so as to limit the same to the facts in the case of Garns v. Rollins, which is the sole basis of the decision of the Roberts v. Gribble Case."

The court then adopts as the correct principle the rule found in 2 Kinney, Irr. and Water Rights, §§ 1193 and 1194, which is quoted in full and reproduced here:

"It was not until the more recent scientific investigations, before mentioned, as to the movements of underground waters through the soil, that these percolating waters tributary to surface waters were recognized as belonging to any particular class, or that any rights could be acquired in them other than the rights which could be acquired to the soil itself, through which they found their way, of which soil, under the prevailing common-law rule, they were considered component parts. But, by these geological and topographical investigations made by the government and others, it has been proven in many instances that waters percolating through the soil of watersheds were not only the sources of supply, but the only source of supply of certain streams and other surface bodies of water. It being proven absolutely that these percolating waters physically are directly tributary to these streams, the law has kept pace with these scientific investigations proving this fact; and therefore it follows that in law they should be, and in many jurisdictions are, dealt with and treated as tributary waters. And, where rights to the waters of the stream itself have been once acquired, by appropriation or otherwise, it is unlawful for persons owning land bordering on the stream to intercept the waters percolating through them on their way to the stream, and apply it to any use other than its reasonable use upon the land upon which it is taken, if he thereby diminishes the flow of the stream to the damage of those having rights therein. Therefore this rule modifies the common-law rule that the owner of the land is also the owner of all the water found percolating as a part of the soil itself, and that

he may use and dispose of it as he sees fit, to the extent that he may only use these waters so percolating through his land, subject: First, to the rights of others to the water flowing in the stream which this water augments, upon the same principle as though this water was a part of the stream itself. * * *"

In the concluding part of the opinion the court said:

"The fact that the water in question may be percolating or seepage, as contradistinguished from the water flowing in known and defined underground channels, does not alter the case. The controlling question always is: *Was the water in question appropriated and put to beneficial use by others before the interception and attempted appropriation thereof by the land-owner?*" (The italics are ours.)

See, also, McClintock v. Hudson, 141 Cal. 275, 74 Pac. 849, a tunnel case, in which the facts are much like those in the instant case. In this connection it is proper to state that these two opinions were rendered after the decision in this case was filed in the court below.

The water in controversy is unconnected with plaintiff's use of the tunnel—in fact, is not used for the plaintiff's own use, its business being mining, and not farming—and therefore it cannot be said that selling it is a reasonable, or, so far as its business is affected, a beneficial, use. See Mr. Justice Baskin's concurring opinion in Herriman Irr. Co. v. Keel, 25 Utah, 96, 124, 69 Pac. 719, on that point. To sell it to other irrigation companies cannot be said to be a reasonable and beneficial use for its business, when the effect of it is, as the evidence in the case at bar clearly establishes, that it is destructive of defendants' rights to use the water of Snake creek, which they had, 25 years before the driving of the tunnel by the plaintiff, appropriated, and without it their lands would become absolutely valueless.

The decree in favor of the plaintiff must be reversed, and a decree entered dismissing its complaint. On the counterclaim, defendants are entitled to an injunction enjoining plaintiff from asserting any claim to the surplus waters, flowing from the portals of the mine into Snake creek, not wanted for operating its mines, and quieting defendants' title thereto. The prayer for an injunction enjoining the plaintiff from extending its tunnel further in the mountain will be denied.